In re FOUNTAIN BAY MINING
COMPANY, INC., Debtor.

Bankruptcy No. 7–82–01609.

United States Bankruptcy Court,
W.D. Virginia,
Big Stone Gap Division.

Feb. 1, 1985.

Robert T. Copeland, Abingdon, Va., for debtor.

Eugene E. Derryberry, Roanoke, Va., for Glamorgan Coal Corp.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court is whether two (2) Claims of Glamorgan Coal Corporation ("Glamorgan") in the amounts of $131,796.50 and $60,000.00 are administrative priority expenses pursuant to 11 U.S.C. § 503.

On December 16, 1982, the Debtor filed its Chapter 11 case in this Court seeking reorganization of its financial affairs. Following many hearings and issues raised, by adversary proceedings and otherwise, the Court on February 1, 1984 directed the Debtor to file a Disclosure Statement and Plan on or before February 28, 1984. On February 28, 1984, the Debtor, as well as Virginia Iron, Coal and Coke Corporation ("VICC"), filed Plans. The Debtor's Plan was predicated upon a business arrangement with Glamorgan. Numerous objections were filed to the VICC Plan and VICC objected to the Debtor's Plan. Neither Plan was confirmed. Thereafter, on August 28, 1984, the Debtor, having arranged outside financing separate from Glamorgan of approximately 1.5 Million Dollars, requested and was granted leave to file a modified Plan, which was more favorable to creditors and was filed on August 30, 1984. The Debtor's modified Plan came on for hearing, at which time the Court, finding that the modified Plan should be confirmed, so ordered the confirmation over objections of Glamorgan.

With the filing of the objection to the Debtor's modified Plan, Glamorgan also filed the Claims in question as administrative priority claims and an additional Claim for $43,413.00, arising out of a lease purchase agreement for a belt drive. The latter Claim is subject to separate resolution and is not considered herein.

Prior to the filing and confirmation of the modified Plan of the Debtor, the Debtor had negotiated over a long period of time with Glamorgan, which is another coal operating company as the Debtor. In these negotiations, Glamorgan was interested in acquiring the Debtor's interest in valuable coal leases in the vicinity of their operations. In their negotiations, the parties entered into contracts and option agreements which specifically recited that these were subject to the approval of this Court. This was never obtained and, pursuant to said negotiations, Glamorgan engaged in numerous activities which included services of their engineers and attorneys, as well as other employees employed in their operation.

The two Claims in question had supporting documentation reflecting numerous dates and activities which, together, over the period in question, totaled the Claims asserted. It appeared from the evidence that most of the activity between the Debtor and Glamorgan consisted of efforts on behalf of the employees of Glamorgan to make studies, analyses, summaries, and projections in acquiring the leases and assisting the Debtor in proposing a Plan incorporating Glamorgan's interest as the parties had contemplated.

The Claim for $60,000.00 [1] (docketed as Claim No. 60) reflects a claim for reim-

1. The evidence at trial supported an amount of $53,412.87.

bursement of expenses incurred by Glamorgan. The Claim for $131,796.50 (docketed as Claim No. 58) is primarily asserted as the amount of lost profits of Glamorgan as a result of the agreements not being approved by this Court under the original Plan or otherwise.

Glamorgan's brief cites for authorities supporting its Claims two cases: *Re: Chugiak Boat Works, Inc.*, 6 C.B.C.2d 273, 18 B.R. 292 (D. Alaska 1982), and *Re: IML Freight, Inc.*, 10 C.B.C.2d 263, 37 B.R. 556 (D. Utah 1984). Both cases clearly arose under factual circumstances in the ordinary course of business of the Chapter 11 debtors. The *Chugiak* case involved down payment on a contract in which the debtor agreed to construct a boat, which was its primary business, and the *IML* case involved post-petition wages incurred in its ordinary course of business. Glamorgan's Claims here arise not primarily out of the Debtor's mining business, but out of Glamorgan's efforts to assist in the Debtor's Plan, permitting Glamorgan to have transferred to it valuable coal leases held by the Debtor, which was obviously motivated by future financial benefits to Glamorgan in years to come.

■ The consideration of issues such as the one here requires the Court to always be vigilant to the fact that the resolution of the controversy between the immediate parties also materially affects the interests of the other creditors. Here, the Debtor's tentative arrangements to transfer its most valuable asset, the coal leases, requires compliance with the Statutes as the Debtor properly provided in the documents for Court approval. 11 U.S.C. § 363(b)(1) dictates that only after notice and hearing can such property be transferred which is not in the ordinary course of business. The transfer of the primary asset of this Debtor is not a routine, ordinary course of business matter, and compliance with § 363 is mandatory.

11 U.S.C. § 1123(b)(4) authorizes debtors to transfer assets pursuant to a plan of reorganization. Such a transfer, however, requires Court approval and is shrouded with procedural protection of creditors' interests in such efforts.

The Court has analyzed the lengthy documentation filed with the claims and concludes that the overwhelming expenditures of time and effort were obviously for the purpose and benefit of enhancing Glamorgan's acquisition of the coal leases through a Plan of the Debtor. A small portion, such as accounting services by the office personnel of Glamorgan and other advisory assistance in aid of the Debtor's operation to improve its efficiency and productivity, may well be considered as an administrative claim arising in the ordinary course of business and allowable ahead of other general creditors pursuant to 11 U.S.C. § 503.

■ The attached documentation reflects many entries of services rendered by professional engineers, attorneys, and others asserted to be on behalf of the Debtor's ongoing Chapter 11 case. 11 U.S.C. § 327 and *Federal Bankruptcy Rule* 2014 accord a specific requirement in the employment of professional persons, *i.e.*, to be with Court approval. Without Court approval, professionals rendering services to debtors generally are considered volunteers and cannot be compensated for their services unless the statute and Rules are complied with. *See In re First Federal Corp.*, 43 B.R. 388 (Bankr. W.D.Va.1984); 2 *Collier on Bankruptcy* (15th ed.), 327.02.

■ The Court, therefore, must review the provisions of 11 U.S.C. § 503. Section 503(b) provides that after notice and hearing, administrative expenses shall be allowed for actual, necessary costs and expenses of preserving the estate, including wages, salaries, and commissions for services rendered after the commencement of the case. The Court has analyzed the documents attached to the claims herein and, although precise details of services rendered are not set forth, nor their value, the Court in sifting the facts concludes that the

cost of bookkeeping, accounting, and advisory services rendered to this Debtor by Glamorgan personnel, which can be categorized as a necessary cost and expense incurred herein, is the sum of $10,000.00 of Claim No. 60.

Accordingly, it is

## ADJUDGED and ORDERED

that Claim No. 60 of Glamorgan in the sum of $10,000.00 be, and is hereby allowed as a priority administrative expense, and the remaining portion of said Claim in the amount proved of $43,412.87 is, upon Debtor's recommendation, allowed as a general unsecured Claim. Claim No. 58 in the amount of $131,796.50, representing claimed lost profits, is disallowed as being remote, speculative, and essentially failure to obtain the Debtor's leases.

The Creditors' Committee or other party in interest shall have a period of ten (10) days from this date within which to request reconsideration of this Court's allowance of the sum of $43,412.87 as a general unsecured Claim.

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtor; Debtor's Attorney; to the members of the Creditors' Committee; and to Counsel for Glamorgan Coal Corporation.