**UNITED STATES of America,**
**Appellant,**

v.

**BOOTH TOW SERVICES,**
**INC., Appellee.**

**No. 84-0476-CV-W-5.**

United States District Court,
W.D. Missouri, W.D.

Feb. 8, 1985.

---

E. Eugene Harrison, Asst. U.S. Atty., Kansas City, Mo., Glenn Dawson, Tax Div., Dept. of Justice, Washington, D.C., for appellant.

Byron C. Loudon, Kansas City, Kan., Jeffrey S. Bay, Van Osdoll, Magruder, Erickson & Redmond, Kansas City, Mo., for appellee.

## OPINION AND ORDER

SCOTT O. WRIGHT, Chief Judge.

This is an appeal from the Bankruptcy Judge's order approving the sale/leaseback of five tow trucks belonging to the Chapter 11 debtor-in-possession. The question before the Court is whether the sale/leaseback arrangement was conditioned upon "adequate protection" of appellant's secured claim. For the reasons set forth below, the Bankrutpcy Judge's order will be vacated and this case will be remanded for further proceedings consistent with this opinion.

## I. *Background*

This appeal arises from the Chapter 11 Bankruptcy proceedings of appellee, Booth Tow Services, Inc. (Booth). Appellant, the Internal Revenue Service (IRS), held claims totalling $178,472.27 as of the date of the petition. The secured portion of the IRS's claim, arising from federal tax liens [1] filed in 1980 and 1981, is $120,489.84 plus post-position interest.

■ On June 1, 1981, Booth filed a voluntary Chapter 11 petition. Booth's Reorganization Plan was confirmed by the Bankruptcy Court on April 13, 1982. Under the Plan, the IRS was to receive $5,000 quarterly payments, annual payments of 45% of net annual cash flow, and a final lump sum payment in 1986.[2] Booth did not make its first quarterly payment to the IRS and continued to make either late payments or no payments at all. In 1983, the IRS filed a motion to convert the proceedings into a Chapter 7 liquidation. Booth responded by seeking the Bankruptcy Court's permission to sell and lease back its most substantial assets, five large tow trucks. The proposed sale price was $235,000.00. At the time of the proposed sale, the debtor's equity in the tow trucks was $185,-000.00. Of the $185,000.00 to be realized as proceeds from the sale, Booth proposed to set aside $30,000.00 for the IRS and to pay $17,500.00 on an allowed administrative claim, $20,000.00 for attorney's fees,

$25,000.00 to Central Bank of Kansas City, $50,000.00 on accounts payable, and $42,-000.00 to various unsecured creditors.

The IRS objected to the proposed sale/leaseback and distribution of proceeds, contending that its secured claim would not be "adequately protected" within the meaning of 11 U.S.C. §§ 361, 363. The Bankruptcy Court ruled to the contrary, holding that $30,000.00 was enough to cover the IRS's secured interest in the tow trucks. Consequently, the Bankruptcy Court approved Booth's sale/leaseback proposal on December 13, 1983.[3] The cash infusion realized as a result of the sale apparently was not much help; while this appeal was pending, this case was converted from a Chapter 11 reorganization to a Chapter 7 liquidation.

On appeal, the IRS seeks to set aside the sale of the tow trucks and distribution of the sale proceeds. The parties apparently are in agreement that the IRS's total claim as of the date of the petition was $178,-472.27, and that the secured portion of that claim was $120,489.84. However, the parties are in sharp disagreement over the amount of the IRS's "secured status" in the tow trucks *qua* collateral. Booth contends that the Bankruptcy Court properly assessed the IRS's secured status in the tow trucks at $30,000.00 because the debtor had equity of only $30,000.00 in the tow trucks at the time the Plan was confirmed.

---

1. A federal tax lien extends to *all* property of the debtor. 26 U.S.C. § 6321.

2. Article V(b) of the Plan expressly provided that the debtor's property remained subject to the security interests of all holders of secured claims. Thus, the IRS's tax liens remained in effect notwithstanding confirmation of the Plan. Nevertheless, under the Plan the IRS's entire claim apparently was treated as an unsecured claim under 11 U.S.C. § 507(a)(6). This Court does not understand why, over the IRS's objection, this portion of the Plan was confirmed. The Bankruptcy Court's order of April 13, 1982, does not help explain this treatment of the government's timely filed tax lien. The IRS specifically objected to the treatment of its secured claim as a § 507(a)(6) unsecured claim. Nevertheless, the Bankruptcy Court ruled that the IRS's interests would not be impaired by the Plan and consequently confirmed it. Although

this Court must confess that it has less experience in these matters than the Bankruptcy Judge, it is difficult to understand how the IRS's secured claim could avoid being impaired by classification as an unsecured claim. Upon remand, the Bankruptcy Judge should articulate the reasoning underlying the Plan's treatment of the IRS's secured claim.

3. By its terms, the Bankruptcy Judge's order of December 13, 1983, only granted Booth permission to sell the tow trucks and lease them back; it did not expressly authorize distribution of the sale proceeds. On March 1, 1984, the Bankruptcy Judge stayed distribution of the sale proceeds pending appeal. In the interim, however, the sale proceeds had already been distributed. Whether the debtor's distribution of the sale proceeds without express authorization constitutes grounds for a contempt citation will be an issue before the Bankruptcy Court on remand.

Booth alternatively argues that the IRS has no secured interest in the tow trucks because the debtor had no equity in the tow trucks as of the date of the petition and, pursuant to 11 U.S.C. § 552(a), the filing of the petition cut off the IRS's tax liens with respect to the debtor's post-petition equity in the tow trucks. In contrast, the IRS maintains that the proper date for valuation of its secured status in the tow trucks was the date on which the Bankruptcy Court approved the debtor's sale/leaseback proposal; accordingly, the IRS argues that its interest in the tow trucks *qua* collateral was $120,489.84 and that the $30,000.00 set aside from the sale proceeds was insufficient to adequately protect the IRS's secured position.

## II. *Questions Presented*

Two interrelated issues are involved in this appeal. First, the Court must determine the proper date for valuation of the IRS's secured status in the tow trucks *qua* collateral. Second, in light of the IRS's interest in the tow trucks *qua* collateral and the value of other property remaining in the debtor's estate, the Court must decide whether the sale/leaseback of the tow trucks was conditioned upon "adequate protection" within the meaning of 11 U.S.C. §§ 361, 363.

## III. *Standard of Review*

This case is deemed to have been referred from this Court to the Bankruptcy Judge pursuant to an order entered by the United States District Court for the Western District of Missouri which adopted an Emergency Resolution to provide for the administration of the bankruptcy system.[4] The resolution provides that

> [i]n conducting review, the district judge may hold a hearing and may receive such evidence as he deems appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge.

Emergency Resolution (c)(5)(B). Since the present matter was not decided by the Bankruptcy Court until December 13, 1983, the decision below was rendered subject to the emergency rule. *See* Emergency Resolution (d).

## IV. *Discussion*

### A. *Valuation of the IRS's secured status*

The Bankruptcy Judge apparently agreed with Booth's contention that the IRS's secured status in the tow trucks *qua* collateral was only $30,000.00. This finding clearly was in error. The proper date for valuation of the IRS's secured status with respect to the tow trucks was the date on which the Bankruptcy Court conducted its hearing on Booth's sale/leaseback proposal. Booth's arguments to the contrary lack merit. Booth's contention that the date of the petition is the correct date for valuation rests on the faulty assumption that 11 U.S.C. § 552(a) applies to involuntary security interests such as the IRS's tax liens. By its terms, § 552(a) only applies to *voluntary* security agreements. Thus, the filing of Booth's petition did not cut off the IRS's tax liens with respect to post-petition equity. *See In re Frost,* 19 B.R. 804, 808 (Bankr.D.Kan.1982); 4 Collier on Bankruptcy § 552, at 552–3 n. 3.

Similarly, Booth's argument that the date on which the Plan was confirmed is the correct date for valuation is contradicted by the plain language of the Bankruptcy Code. The controlling statute provides that the proper time to value the secured status of a creditor in specific property is "in conjunction with [the] hearing on [the] disposition" of such property. 11 U.S.C. § 506(a). Thus, the date on which the Plan was confirmed is irrelevant to the valuation of the IRS's secured status in the tow trucks; instead, the date of the § 363 hearing on the proposed sale/leaseback should have been used as

---

**4.** The Emergency Resolution was promulgated in the wake of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in order to ensure that the bankruptcy system fits within the constitutional contours of Article III of the United States Constitution.

the date for determining the IRS's interest in the collateral. *See* 3 Collier on Bankruptcy, § 506, at 506–18—506–32. On that date, Booth's equity in the tow trucks was $185,000.00, and the amount of the IRS's secured claim was $120,489.84 plus post-petition interest. Consequently, the IRS's secured claim was fully covered by the debtor's equity in the tow trucks. Therefore, $120,489.84 plus post-petition interest—not $30,000.00—was the correct amount of the IRS's secured status in the tow trucks *qua* collateral. 11 U.S.C. § 506(a), (d).

### B. *Adequate Protection*

■ Although the Bankruptcy Court erred in valuing the IRS's "secured status" in the tow trucks at $30,000.00, the fact that the IRS's "secured status" was actually $120,489.84 is not determinative of the adequate protection issue. Distribution of a debtor's property to third parties is objectionable on adequate protection grounds only if there is a substantial threat that the value of the remaining collateral will dip below the amount of the secured claim.[5]

*See* 11 U.S.C. §§ 361, 363. In essence, the adequate protection doctrine exists to prevent impairment of a secured creditor's secured position as a result of a decline in the value of the debtor's assets. Where adequate protection is warranted, the Bankruptcy Court's duty to provide it is mandatory.[6] 2 Collier on Bankruptcy, § 361, at 361–5.

■ Here, the IRS appeared to be fully secured before distribution of the sale proceeds.[7] Consequently, the IRS was reasonably concerned by Booth's proposed sale and distribution of proceeds because the tow trucks were by far the most valuable assets belonging to the debtor. However, in order to determine whether distribution of the sale proceeds impaired the IRS's secured position, it is first necessary to know the total value of the other assets belonging to Booth.[8] The total value of those other assets does not appear in the record.[9] In addition, it is necessary to know of the relative priorities among the IRS and other secured creditors of Booth.[10]

---

5. To illustrate, suppose that the secured creditor, C, holds a claim worth $10,000 which is secured by all property belonging to the Chapter 11 debtor, D. D proposes to sell equipment for $10,000 and to use the proceeds to pay off various unsecured creditors. If D has no other property, the proposed sale and distribution of proceeds would be objectionable on adequate protection grounds because it would impair C's ability to satisfy his secured claim. If D has other property worth $50,000, however, the proposed sale and distribution of proceeds is not objectionable because C can look to the remaining $50,000 in collateral to protect his secured claim.

6. Because adequate protection is a matter or right and not a matter of discretion, this Court believes that it was improper for the Bankruptcy Judge to engage in a balancing analysis in its order approving Booth's sale/leaseback proposal. Indeed, in view of Booth's pattern of delinquent payments under the Plan, the Bankruptcy Court should have been particularly reluctant to reject the IRS's adequate protection arguments.

7. Prior to distribution of the sale proceeds, the debtor's property was worth at least $185,000.00 while the IRS's secured claim totalled $120,-489.84 plus post-petition interest. However, the IRS was not necessarily fully secured before distribution of the sale proceeds. For example, if another secured creditor entitled to priority

over the IRS held a secured claim encompassing all of Booth's property, the value of IRS's tax lien might amount to nothing. *See* footnote 10 *infra*.

8. *See* footnote 5 *supra*.

9. By an order entered October 5, 1984, this Court attempted to have the parties supply this information. In the interim, however, this case was converted to a Chapter 7 liquidation. Thereupon, the debtor informed the Court that it no longer had any interest in the disposition of this appeal. Consequently, the requested information has not been received by this Court and it will be the Bankruptcy Court's job on remand to compile the relevant financial data.

10. To illustrate, suppose that a secured creditor, C1, holds a claim worth $10,000 which is secured by all property belonging to the Chapter 11 debtor, D. D proposes to sell equipment worth $10,000 and to use the proceeds to pay off various unsecured creditors. After distribution of sale proceeds, D will have $10,000 worth of remaining assets. If there is no other secured creditor with priority over C1, the distribution of sale proceeds is not objectionable because C1 will remain fully secured. Now, suppose that there is a second secured creditor, C2, with priority over C1. If the secured claim of C2 is worth $10,000, C1 can prevent the sale and

Unfortunately, this information does not appear in the record.

■■■ Consequently, this case must be remanded to the Bankruptcy Court for supplementation of the record and reconsideration. On remand, the Bankruptcy Judge should take evidence on two matters: (1) the total value of Booth's assets, exclusive of the tow trucks, as of December 13, 1983; and (2) the relative priorities of the IRS and other secured creditors of Booth with respect to Booth's assets as of December 13, 1983. Only after this information has been compiled can the adequate protection issue be resolved.[11]

## V. *Conclusion*

This Court holds that the Bankruptcy Court erred in valuing the IRS's secured status in Booth's tow trucks at only $30,-000.00; instead, the proper amount of the IRS's secured status in the tow trucks was $120,489.84 plus post-petition interest. This determination, however, is not dispositive of the adequate protection issue raised by the IRS. Instead, the crucial inquiry—whether Booth's proposed sale and distribution of proceeds impaired the IRS's ability to satisfy its secured claim—cannot be determined on the present record. Accordingly, it is hereby

ORDERED that the Bankruptcy Court's order of December 13, 1983, is vacated. It is further

ORDERED that this case is remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

distribution of proceeds on adequate protection grounds; otherwise, his secured position would decline from $10,000 to $0. But if the secured claim of C2 is worth $20,000, C1 cannot oppose the sale and distribution of proceeds. Both before and after the distribution of proceeds, C1's secured position would be $0; the distribution of sale proceeds would put him in no worse position than he was in originally.

**11.** If it appears that the IRS's secured claim was not adequately protected by Booth's sale and distribution of proceeds proposal, the Bankrupt-

cy Court will reach the issue of appropriate relief. Assuming that the buyer of the tow trucks acted in good faith, that entity should remain unaffected by the ultimate resolution of the adequate protection issue. *See* 11 U.S.C. § 363(m). However, there is no analogous provision in the Bankruptcy Code affording protection to good faith distributees of the sale proceeds; accordingly, it appears that the distributees may be compelled to return the amounts they received to the debtor's estate.