In the Matter of W. Edward
PLIHAL, Debtor.

W. Edward PLIHAL, Plaintiff,

v.

FIRST NATIONAL BANK OF
WAHOO, Defendant.

Bankruptcy Nos. BK88–40671, A88–4057.

United States Bankruptcy Court,
D. Nebraska.

Feb. 21, 1989.

Donald Swanson of Schmid, Mooney & Frederick, P.C., Omaha, Neb., for plaintiff.

Steven Woolley of Polack and Woolley, P.C., Omaha, Neb., for First Nat. Bank of Wahoo (Bank).

Mark Krieger, Lincoln, Neb., for The Austin Co., Inc., Receiver.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Trial was held on this matter and a companion case which is a turnover action, Adversary No. A88–4056, 97 B.R. 561, which is entitled *W. Edward Plihal, Plaintiff, v. The Austin Co., Inc., Defendant and First National Bank of Wahoo, Intervenor,* on January 6 and January 20, 1989. Appearing on behalf of the plaintiff was Donald Swanson of Schmid, Mooney & Frederick, P.C., Omaha, Nebraska. Appearing on behalf of the First National Bank of Wahoo (Bank) was Steven Woolley of Polack and Woolley, P.C., Omaha, Nebraska. Appearing on behalf of The Austin Co., Inc., Receiver, was Mark Krieger of Lincoln, Nebraska.

Although the cases were tried together, separate memoranda and journal entries shall be entered in each. This memorandum applies only to the adversary A88–4057 which is characterized as a lien avoidance action brought by the debtor against the Bank.

### Facts

The parties have stipulated to a certain number of facts and those shall be recited at this time. Additional factual findings made by the Court will be identified specifically.

Debtor owes the Bank an amount certain which is secured by a mortgage on real estate in Pawnee County, Nebraska. The debtor is the legal owner of a portion of said real estate and is a contract vendee/equitable owner of the balance. On September 4, 1987, the fair market value of the real estate was less than the amount of the indebtedness secured by the real estate. The Bank filed a petition for foreclosure of mortgage and application for appointment of receiver on September 4, 1987, in the District Court of Pawnee County, Nebraska. The note had not been paid according to its terms and default had occurred prior to the institution of the mortgage foreclosure action.

On September 4, 1987, the principal sum of $213,497.56 together with interest in the sum of $162,236.22 was due and owing, for a total indebtedness of $375,733.78.

On September 4, 1987, the Bank filed a Notice of Suit pursuant to Neb.Rev.Stat. § 25–531 (Reissue 1988) which was properly recorded.

Prior to the appointment of a receiver by the District Court of Pawnee County in the foreclosure action, the debtor filed a Chapter 7 bankruptcy petition on September 29, 1987, Case No. Bk87–40057. Debtor received a discharge in the Chapter 7 case and, during the pendency of the Chapter 7 case, the Bank was granted relief from the automatic stay to complete its foreclosure. The hearing on the appointment of receiver which was originally scheduled for September 29, 1987, in the District Court of Pawnee County was then rescheduled for hearing on January 25, 1988.

On January 25, 1988, debtor filed a Chapter 13 petition, Case No. BK88–40047. The District Court of Pawnee County hearing on the appointment of receiver was then canceled until the Chapter 13 case was dismissed. Eventually the Bank's application for appointment of receiver was heard on April 20, 1988, by the District Court of Pawnee County, Nebraska, at which time and date a journal entry was made by the court sustaining the motion.

The Bank's mortgage does not contain a separate pledge or grant of an interest in rents and profits. The receiver, following appointment and qualification, entered into a written lease of the real estate in question which was dated May 5, 1988. The terms of the lease included possession for one year; cash rent of $11,645.00, payable one-half on May 6, 1988, and one-half on

November 1, 1988, all of which was timely paid by the tenant to the receiver.

Debtor did not expend any time or money toward the 1988 crop produced on the real estate or toward the negotiation or making of the 1988 lease covering the real estate.

On July 15, 1988, debtor filed a Chapter 11 petition in this Court, Case No. Bk88–40671. Debtor then filed this adversary proceeding alleging that the appointment of a receiver on April 20, 1988, was a transfer of property for the benefit of a creditor on behalf of an antecedent debt, that such transfer was within ninety days of the filing of the Chapter 11 petition and was done at a time when the debtor was insolvent. Therefore, the initial complaint prayed that the Court find that the appointment of a receiver was a preference under 11 U.S.C. § 547. Plaintiff/debtor was permitted to amend the complaint twice. Additional grounds for the avoidance of the "lien" which allegedly arose at the time of the appointment of the receiver were stated. Plaintiff/debtor claims that it has the power to avoid such lien pursuant to 11 U.S.C. §§ 544, 545, 547 and 552 and it now alleges that the "lien" which can be avoided is a lien on "rents and profits arising from the real estate, which lien first becomes effective against the debtor when a custodian is appointed or authorized to take or takes possession." See second amendment to complaint, Count III, Paragraph 12.

The Bank responds on various theories, but the most significant are that the debtor was not insolvent on the date of the transfer, April 20, 1988, and, therefore, no preference could have occurred. In addition, the Bank claims that the lien which it has on rents for the 1988 crop year arose at the time of the default by the debtor and was perfected on the date the Bank filed its foreclosure action and its request for appointment of a receiver, September 4, 1987. If that is correct, the "transfer" occurred long before the ninety days prior to the petition and no preference occurred. The Bank has other defenses concerning Section 544, Section 545 and Section 552, which will be referred to later in this opinion.

With regard to the solvency or insolvency of the debtor on April 20, 1988, the parties have agreed on the many factual points which will be recited here and they have disagreed on a few. The Court will make specific findings on those few on which the parties disagreed.

The parties stipulate (see plaintiff's Exhibit 1) to the following as of the time of the appointment of receiver in April of 1988:

a) The value of the real estate equals the total amount of real estate tax liens (first lien), land contract claim (second lien) and Bank's mortgage claim (third lien). The Bank's deficiency claim in excess of the land value was discharged in the Chapter 7 case.

b) Buick Skyhawk—value $7,106.00, subject to a lien in favor of GMAC in the sum of $7,106.00.

c) Tractor—value $4,400.00; disc—value $700.00; stock—value $1,553.00.

The tractor and stock are subject to a lien in favor of Store Kraft Credit Union in the sum of $5,953.00. This leaves an equity of zero.

The entire value of the disc was subject in April of 1988 to a lien in favor of Bank, which lien was avoided by an order entered in the Chapter 7 bankruptcy proceeding on June 20, 1988, sustaining a motion filed on May 10, 1988.

d) Cash on hand—value $255.00 which is exempt under debtor's in-lieu-of Homestead Exemption (Neb.Rev.Stat. § 25–1552 (Reissue 1988)).

e) Household goods and furnishings—value $1,250.00; clothing and personal effects—value $250.00.

These assets are entirely exempt under Neb.Rev.Stat. § 25–1556 (Reisue 1988).

f) Life insurance cash value $600.00.

This asset is exempt under Neb.Rev.Stat. § 44–371 (Reissue 1988).

g) There is a support exemption claim in the amount of $4,200.00 which is in dispute and on appeal. The parties agree that either the $4,200.00 is not an asset of the debtor or, if it is an asset of the debtor, it

is entirely exempt under Neb.Rev.Stat. § 25–1556.

h) There is a dispute between the parties which will be resolved by the Court in this memorandum concerning whether or not the right to 1988 income from this real estate should be included in the solvency/insolvency calculation. The Bank believes that the $11,645.00 which the receiver obtained from the tenant after April 20, 1988, should be included in the calculation because the debtor had some type of a right or expectancy to income from the property. However, the Bank does not think any expenses should be deducted from that income right, such as the receiver fees or taxes because the Bank believes the solvency/insolvency calculation must be determined as if the complained of transfer had not taken place. This matter will be discussed in detail later in the opinion.

i) Debtor claims ownership of $1,700.00 worth of 1987 government farm program payments held in his name by the Pawnee County A.S.C.S. Office based on debtor's contention that his Chapter 7 bankruptcy trustee has abandoned the same. The Bank disputes the claim of abandonment. This matter will be discussed later.

j) Between September 1, 1987, and April 20, 1988, debtor transferred a total of $850.00 by payroll deduction in direct deposit into his wife's account at Store Kraft Credit Union. The payroll deduction was at the rate of $50.00 per paycheck. There is a dispute as to the effect of the existence of such fund upon the solvency/insolvency issue. Mr. Plihal's name is not on said Store Kraft account of his wife nor is he authorized to withdraw funds from said account.

k) The debtor's Chapter 7 bankruptcy trustee has been directed by Court order on October 4, 1988, to pay debtor's attorney $518.42 from the assets of the Chapter 7 bankruptcy estate. A dispute exists as to whether this fund should be included as an asset of debtor for the solvency/insolvency purpose.

l) No other assets are to be included in the solvency/insolvency computation.

m) In addition to the exemptions identified in the preceding sub-paragraphs, the debtor has additional in-lieu-of Homestead Exemption in the sum of $1,645.00 to be applied against any equity in the personal property.

n) Plaintiff's debts as of April 20, 1988, include attorney fees in a disputed amount to two different law firms; the amount of $430.00 to Schultis & Sons, apparently for an appraisal; and $1,695.00 due to the Internal Revenue Service and $410.00 due the Nebraska Department of Revenue for income tax liability for 1987. Both of the tax amounts were testified to by the tax preparer without objection.

On April 20, 1988, the parties agree that the debtor had net wages due of $523.00. The debtor claims an exemption of $444.64 pursuant to Neb.Rev.Stat. § 25–1558(1)(c). The net amount of the wage asset for purposes of the solvency/insolvency calculation is $78.47.

With regard to the assets and liabilities which are listed as in dispute above, the Court makes the following findings of fact:

### a) Assets

■ The right, on April 20, 1988, to receive income from the real estate during the 1988 crop year is a property interest which must be valued. See 1 *Collier on Bankruptcy* ¶ 101.31 at 101–78 (15th ed. 1988). Ownership and right to possession of the real estate provides the debtor with the additional right to receive the income from the real estate. The issue then concerns valuation of that right. The definition of insolvent is contained at 11 U.S.C. § 101(31). That section requires the Court to determine the "fair valuation" of the assets and the liabilities.

■ The determination of solvency or insolvency for purposes of the preference test and under the definition at Section 101(31) is not a strictly "balance sheet" calculation, although one has to determine the value of the assets and the value of the liabilities. A true balance sheet does not reflect "fair valuation" of either assets or liabilities. *In re F & S Cent. Mfg. Corp.*,

53 B.R. 842, 849 (Bankr. E.D.N.Y.1985). Fair value is determined by estimating what the debtor's assets would realize if sold in a prudent manner in current market conditions. *Id.*

Courts have historically determined the fair selling price or fair value of an asset by considering numerous elements, including physical characteristics, location, type of business for which the premises are designed or suited, age and condition, original costs, and past and prospective earnings or other pertinent factors. 2 *Collier on Bankruptcy* ¶ 101.31 at 101–91 and 101–92 (15th ed. 1988). Courts have also valued future or other conditional interests in view of the particular circumstances. 2 *Collier on Bankruptcy* ¶ 101.31 at 101–93 (15th ed. 1988); *see also Briden v. Foley*, 776 F.2d 379, 382 (1st Cir.1985). *Briden* suggests that the determination of insolvency is a question of fact and that the Bankruptcy Court is required to determine the fair market value of the debtor's assets and liabilities within a reasonable time of the transfers.

The Seventh Circuit Court of Appeals has acknowledged that in making the insolvency determination, the Bankruptcy Court must consider all assets, whether they be contingent or not and determine a value for each of those assets. The court stated: "It makes no difference whether the firm has a contingent asset or a contingent liability; the asset or liability must be reduced to its present, *or expected,* value before a determination can be made whether the firm's assets exceed its liabilities." *In re Xonics Photochem., Inc.,* 841 F.2d 198, 200 (7th Cir.1988). (citations omitted) (emphasis added).

■ In this case, on April 20, 1988, the debtor was in possession of the real estate and had the right to farm it or obtain income from it through a rental process. From the testimony, it is clear that the debtor had no funds available to finance the input, maintenance and harvesting of the 1988 crop. However, the debtor could have, as the receiver did within two weeks, rented the property for cash rent for 1988 and the debtor would have had no financial obligations as a result of such cash rent lease. This Court finds that it is reasonable, based upon the facts listed above, to value the income expectancy of the debtor on April 20, 1988, as the amount of cash rent that the receiver was able to obtain within two weeks after April 20, 1988.

Although the receiver did not have a lease in place on April 20, 1988, the receiver was not required to go far nor to spend too much time in obtaining a written rental agreement for $11,645.00. The tenant contracting with the receiver is the same person who contracted with the debtor two years before and paid cash rent for the use of some, although not all, of the real estate involved here. The debtor had been able to rent the property in 1985 and 1986 to this tenant and the receiver was able to rent this property in 1988 to the same tenant. The evidence of the availability of the tenant, the ease with which a lease was entered into, the time frame (two weeks) in which the receiver was able to rent the premises, lead this Court to believe that the "income value" property right was $11,-645.00 on April 20, 1988.

The parties have also disputed whether or not the $850.00 placed by debtor in a "tax fund" accessible only to his spouse should be considered as his property for the solvency/insolvency calculation. The evidence is that the debtor had these funds deducted from his paycheck and put in an account solely in his spouse's name. The fund was to be used in payment of income taxes and only if there was excess after the payment of such income taxes was the wife to have complete ownership. It is logical to treat the $850.00 fund as an asset of the debtor if the gross amount of the income taxes will be used as a liability of the debtor. Since it was the intent of the debtor, and apparently his spouse, that this fund be used to pay their joint tax obligations, the fund should be treated as an asset and the gross taxes treated as a liability.

In final argument, both parties assume the right to a $1,700.00 government payment to be received in the future was an asset on April 20, 1988. This Court finds

the right to receive a government payment in the future is an asset.

### b) Liabilities

1) *Taxes.* The gross amount of federal and state taxes were an obligation of debtor on the 20th of April, 1988.

2) *Attorney fees—Donahue.* Mr. Donahue represented debtor in state court matters prior to filing the Chapter 7 petition, bankruptcy matters in Chapter 7, and post petition state court matters. The total fees listed as due to Mr. Donahue on April 20, 1988, are $3,300.00 plus out-of-pocket expenses of $764.00 less $250.00 retainer, for a total of $3,814.00. However, from that amount must be deducted $360.00 of non-bankruptcy prepetition fees which were discharged in the Chapter 7 petition. In addition, Mr. Donahue had agreed with debtor and filed the appropriate statement with the Court that he would perform the Chapter 7 legal services for $500.00 plus costs. On April 20, 1988, Mr. Donahue had not requested the payment of any additional fees from the estate or from the debtor. This Court had not allowed any amount of fees in excess of $500.00.

█ In this District, it has been the practice of the Bankruptcy Court to consider fee applications for amounts in excess of the amount initially agreed upon by debtor and counsel, if appropriate application for such allowance is filed and notice provided to all parties. Without such application and approval, however, there is authority to the effect that the attorney has no legal claim to fees in addition to those initially agreed upon. *See In re Weaver,* 49 B.R. 190, 191 (Bankr.N.D.Ala.1985); *see also In re Fountain Bay Mining Co., Inc.,* 46 B.R. 122, 123 (Bankr.W.D.Va.1985).

Arguably, the full claim for fees could be considered a contingent liability as of April 20, 1988, which should be considered in the solvency/insolvency calculation, just as the right to income from the real estate was considered as an asset and valued, even though the amount was not certain on April 20, 1988. However, there is a difference. The debtor had a *right,* on April 20, 1988, to the income available from the real

estate, whether the income was to be produced by rent or otherwise. Mr. Donahue did not, on April 20, 1988, and still does not, have a *right* to the excess fees and Mr. Plihal did not then, nor does he now, have an obligation to pay the excess fees. This Court concludes that the cases referred to above which deny counsel any legal claim to such fees prior to application and approval by the Court are well reasoned and consistent with the Code and the rules concerning employment of professionals.

Therefore, the Court finds as a fact that Mr. Plihal's liability for Mr. Donahue's fees on April 20, 1988, should be calculated as follows:

| | |
|---|---:|
| Total state court fees | $1,670.00 |
| Less prepetition fees | (360.00) |
| Plus expenses | 764.00 |
| Plus balance of BK fee | 250.00 |
| TOTAL | $2,324.00 |

3) *Attorney Fees—Schmid, Mooney & Frederick.* This firm claims $7,789.00 owed by debtor on April 20, 1988. However, this Court denied allowance of any fees incurred prior to the firm being authorized to represent the debtor. Such denial is a final adjudication concerning the debtor's liability for the amount denied. The total fees allegedly due on April 20, 1988, of $7,789.00 must be reduced by $2,219.00, the amount disallowed. Therefore, the total liability to Schmid, Mooney & Frederick on April 20, 1988, was $5,570.00.

In summary, the asset and liability situation on April 20, 1988, was as follows:

**Assets**

| | | |
|---|---|---:|
| a) | 1988 income right | $11,645.00 |
| b) | tax fund | 850.00 |
| c) | 1987 government program | 1,700.00 |
| d) | net wages | 78.00 |
| e) | less in-lieu-of homestead exemption | (1,645.00) |
| | TOTAL ASSETS | $12,628.00 |

**Liabilities**

| | | |
|---|---|---:|
| a) | Donahue legal fees | $ 2,324.00 |
| b) | Schultis & Sons | 430.00 |
| c) | Schmid, Mooney & Frederick | 5,570.00 |
| d) | IRS | 1,695.00 |
| e) | Nebraska Department of Revenue | 410.00 |
| | TOTAL LIABILITIES | $10,429.00 |

█ This Court finds as a fact that the debtor was not insolvent on April 20, 1988, because his assets exceeded his liabilities based upon "fair valuation" of each.

## Discussion and Legal Conclusions

Since the Court has made a factual finding that the debtor was not insolvent on the date of the transfer, April 20, 1988, the lien on rents and profits which arose as a result of the "transfer," the appointment of the receiver, cannot be avoided as a preference under 11 U.S.C. § 547.

■ The debtor alleges in its complaint that a lien in rents can be avoided under 11 U.S.C. § 552(b). It is the legal conclusion of this Court that Section 552 is not applicable to nonconsensual liens. That section is entitled "post petition effect of security interest." Section 552 provides:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547 and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, *rents,* or profits of such property, then such security interest extends to such proceeds, products, offspring, *rents* or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the Court, after notice and a hearing and based on the equities of the case, orders otherwise. (emphasis added)

The debtor is arguing that from the date of the commencement of the case, July 15, 1988, forward, the lien of the Bank on 1988 rents, although it may continue under Section 552(b) should be cut off by this Court based upon the equities of the case. However, Section 552 is premised upon the existence of a security agreement and a security interest. Those terms are defined at 11 U.S.C. §§ 101(44) "security agreement" and (45) "security interest." A "security agreement" means agreement that creates or provides for a security interest. A "security interest" means lien created by an agreement. Those terms are inapplicable in this case. The Bank does not have an agreement which creates a lien or provides for a security interest in rents. It obtained its right to rents by virtue of the appointment of the receiver which, under the law of the State of Nebraska, gives a mortgage holder the right to possession of the property and the rents from the property even if there is no conveyance or assignment of rents in the mortgage document itself. *McNamara v. Hart,* 83 F.2d 649 (8th Cir. 1936); *Fed. Farm Mortgage Corp. v. Ganser,* 146 Neb. 635, 20 N.W.2d 689 (1945); *see* 59 C.J.S. Mortgages § 316; 10 Thompson on Real Property § 5158; Tardy's Smith on Receivers § 247 (2d ed. 1920).

Various cases and a commentator have suggested that Section 552 applies only to voluntary or consensual liens. *See In re Booth,* 64 B.R. 539, 542 (D.W.D.Mo.1985); *In re Frost,* 19 Bankr. 804, 808 (Bankr.D. Kans.1982); 4 *Collier on Bankruptcy,* ¶ 552, at 552–3 n. 3.

The Court has reviewed the evidence in this case and finds that there are no equities in favor of the debtor which would cause the Court to exercise whatever power it might have to cut off liens pursuant to Section 552(b). The debtor has spent no money and has had no part in the production of the 1988 cash rent. The debtor has not used any effort to protect the interest of the creditor or to protect or improve the collateral on which the creditor has a mortgage lien.

There being no facts upon which this Court could enter an order in favor of the plaintiff under Section 552(b), judgment will be entered in favor of the defendant, Bank.

The complaint attempts to invoke the trustee powers under 11 U.S.C. § 544 to avoid a lien on rents. Section 544 gives the debtor in possession using the powers of trustee the status of a bona fide purchaser who has perfected a transfer at the time the case was commenced and/or the power

of a lien creditor with a judicial lien on property of the debtor. Since the Court has made a factual and legal finding that the Bank obtained its interest, valid under Nebraska law, on April 20, 1988, no bona fide purchaser or judicial lien creditor has any priority over the Bank's position and, therefore, the lien of the Bank cannot be avoided under Section 544.

■ Finally, the debtor attempts to use 11 U.S.C. § 545 to avoid the lien on rents obtained by the Bank. That section permits the trustee, or debtor in possession acting with the powers of trustee, to avoid the fixing of a statutory lien on property of the debtor to the extent that such lien first becomes effective against the debtor when a custodian is appointed or authorized to take or takes possession. The debtor's powers as a trustee are not effective against the lien of the Bank under these circumstances. The Bank's lien against rents is not a statutory lien. The term "statutory lien" is defined at Section 101(47) as a:

> ... lien arising solely by force of a statute on specified circumstances or conditions, or a lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

The Code also defines "judicial lien" at 11 U.S.C. § 101(32) to mean a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

The Bank has an interest in the 1988 and future rents as a result of a judicial lien. The Bank's interest arises in equity apart from statute. The Bank's interest arises and is enforced in a mortgage foreclosure case by the appointment of a receiver as described in Neb.Rev.Stat. § 25–1081 (Reissue 1988). The fact that a mortgage foreclosure proceeding and a receivership proceeding are authorized by and implemented by the use of a statutory procedure does not make the lien created by the institution of such action a statutory lien. *See Mas-*

*cenik v. Ryan*, 6 B.C.D. 763, 765 (D.Colo. 1980).

The Bank's lien is not a statutory lien and Section 545 cannot be utilized by the debtor to avoid the lien.

### *Conclusion*

The Bank has obtained a judicial lien on rents which cannot be avoided as preference under 11 U.S.C. § 547 or under the general avoiding powers of the trustee under Section 544 or as a statutory lien under Section 545 or under the equitable powers granted the court pursuant to Section 552(b). Judgment is entered in favor of defendant and against plaintiff. Separate journal entry shall be filed.