**In the Matter of W. Edward PLIHAL, Debtor.**

**W. Edward PLIHAL, Plaintiff,**

**v.**

**The AUSTIN CO., INC., Defendant,**

**First National Bank of Wahoo, Intervenor.**

**Bankruptcy Nos. BK88–40671, A88–4056.**

United States Bankruptcy Court, D. Nebraska.

Feb. 21, 1989.

562

Donald Swanson of Schmid, Mooney & Frederick, P.C., Omaha, Neb., for plaintiff.

Steven Woolley of Polack & Woolley, P.C., Omaha, Neb., for First Nat. Bank of Wahoo (Bank).

Mark Krieger, Lincoln, Neb., for The Austin Co., Inc., Receiver.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Trial was held on this matter and a companion case which is a preference and lien avoidance action, Adversary No. A88–4057, 97 B.R. 554, which is entitled *W. Edward Plihal, Plaintiff, v. First National Bank of Wahoo, Defendant,* on January 6 and January 20, 1989. Appearing on behalf of the plaintiff was Donald Swanson of Schmid, Mooney & Frederick, P.C., Omaha, Nebraska. Appearing on behalf of the First National Bank of Wahoo (Bank) was Steven Woolley of Polack and Woolley, P.C., Omaha, Nebraska. Appearing on behalf of The Austin Co., Inc., Receiver, was Mark Krieger of Lincoln, Nebraska.

This memorandum concerns only the turnover action. A separate memorandum has been filed in the preference case.

Written final arguments and briefs were delivered to the Court shortly after trial. After a review of all of the exhibits and a review of notes concerning the testimony of all of the witnesses plus a review of all of the briefs and final arguments, the Court now files this memorandum as its findings of fact and conclusions of law pursuant to Bankr.R. 7052.

### Findings of Fact, Conclusions of Law and Discussion

The Bank is the holder of a note secured by a mortgage on real estate in Pawnee County, Nebraska. Both the note and mortgage were executed by the debtor. The note is in default and on September 4, 1987, the Bank filed a mortgage foreclosure action in the appropriate District Court and asked for the appointment of a receiver pursuant to Nebraska law. On the date scheduled for the hearing on the appointment of the receiver, the debtor filed a Chapter 7 bankruptcy. During that Chapter 7 bankruptcy, the Bank obtained relief from the automatic stay and rescheduled the hearing on the appointment of the receiver.

On the date the second hearing for the appointment of a receiver was to be held, the debtor filed a Chapter 13 bankruptcy which was eventually dismissed.

On April 20, 1988, the hearing on the appointment of the receiver was heard and the District Court ordered the appointment of the receiver by sustaining the motion of the Bank. The receiver filed the appropriate bond and took possession of the real estate. The receiver entered into a one-year lease agreement with a tenant on a cash basis. The tenant farmed the land during the crop year 1988 and paid all of the cash rent due.

In July of 1988, the debtor filed a Chapter 11 bankruptcy petition and shortly thereafter filed this adversary proceeding requesting turnover of the property from the custodian pursuant to 11 U.S.C. § 543. The Bank then intervened as a defendant.

Debtor is and has been a full time employee of a corporation with its place of business in Beatrice, Gage County, Nebras-

ka. During 1985 and 1986, debtor was experiencing financial difficulty and was unable to obtain sufficient financing to farm the land. Debtor, therefore, rented the land to a tenant for cash rent for the crop land and did not rent the pasture, nor was it used during those two years. The rental payment for 1986 was something over $6,000.00.

In 1987, the debtor decided to farm the land himself. He met with the officers of the Bank in May of 1987 and discussed a total settlement of his obligations to the Bank and on the next day a bank officer sent him a letter outlining the agreements that they had mutually come to. According to the banker, the debtor had agreed to deed the property to the Bank subject to the right of the debtor to repurchase the property for a sum certain by a certain date during 1987. Upon conveyance of such deed into escrow, the Bank agreed to permit the debtor to retain possession in the crop year 1987 to farm the ground and the Bank agreed to advance $5,000.00 for farming operations.

Debtor did not respond to the letter and testified at trial that he did not agree to give the Bank a deed in escrow but that it was his understanding the Bank would advance the $5,000.00 for farming operations even without such deed. He, therefore, went forward in May and June of 1987, without further contact with the Bank, and entered into credit arrangements with suppliers and custom operators to prepare the ground, plant the seed and do another initial input operations.

The Bank, as a result of debtor's failure to comply with the terms of the oral arrangement, refused to advance further funds and began the foreclosure process. As described above, the Bank filed its foreclosure action on September 4, 1987, and was set for a hearing on the appointment of a receiver on September 29, 1987, when debtor filed the initial bankruptcy case.

Prior to September 29, 1987, debtor began to harvest some of the crops on the land. The harvest was incomplete at the time the bankruptcy was filed and the trustee in bankruptcy completed the har-

vest with the aid and financial assistance of the Bank.

During 1988 the receiver rented the land for $11,645.00. The receiver has expenses of operation, including its annual fee, certain farm operation expenses and legal fees for participation in and defense of this adversary proceeding. The receiver has several thousand dollars on hand subject to payment of taxes and various receivership expenses.

The debtor has no funds with which to operate the farm. His income received from his full time job has been allocated, according to his Chapter 11 plan, as amended, to payment of other living expenses and other obligations not directly related to the farm. He proposes in the Chapter 11 plan, as amended, to enroll the land into the Federal Government Conservation Reserve Program (CRP) for a net income to the estate over a ten-year period of approximately $50.00 per acre per year. The gross cash rent received by the receiver is approximately $50.00 per acre per year during 1988.

There is a significant dispute in the evidence with regard to the debtor's eligibility to participate in the CRP program, the actual costs which will be incurred by the debtor with regard to fencing and cover crops and maintenance and further dispute concerning the availability of the lands for row cropping at the end of the ten-year government contract. There is additional dispute concerning the debtor's ability to finance any of the requirements placed upon the debtor by a government contract with regard to initial preparation of the land and fencing.

The Court finds as a fact that the debtor's estimates of expense with regard to cover seed, maintenance of the property and the fencing expense are credible. Those expense estimates were verified by another witness and, although the choice of inexpensive seed might not be the absolutely best way to manage property under the CRP program, it certainly is an acceptable way to do so and, all other things being equal, the government agency would permit the use of the inexpensive seed.

The debtor does have a disc and tractor available and the fencing, if required, would be relatively inexpensive. The receiver has purchased certain fence materials and posts which would be available to the debtor if he were to obtain turnover of the property.

The debtor intends to enroll the cropland in the CRP program for the crop year 1989 and nine future years. There is a question of fact concerning whether or not the debtor is eligible to participate in the Conservation Reserve Program. There was some testimony by the receiver that operators who evict tenants and then attempt to enroll property in the CRP are not eligible. Such evidence was not rebutted.

The debtor testified that he had talked with certain employees of the Soil Conservation Service in Pawnee County and was satisfied that he would be eligible. However, other evidence was presented to the effect that the Soil Conservation Service employees have no authority for determining participation in CRP because that program is administered by a totally separate federal government agency, the Agricultural Stabilization & Conservation Service (ASCS).

 Although it is not the debtor's burden under Section 543 to show the Court a Chapter 11 plan can be confirmed, once evidence is presented that it is in the best interests of creditors for a custodian to remain in place, the debtor does have an obligation to present at least the framework of a plan which, under the right circumstances, could be confirmed. Here, although many witnesses testified over a two-day period, the debtor did not present evidence of his eligibility for the CRP program. In addition, he did not present any evidence that even if he is eligible for the CRP program, the amount per acre which he proposes as a bid for acceptance by the government is realistic under the present circumstances or would likely be accepted by the government agency.

The Court concludes that the debtor is ineligible to participate in CRP during 1989. Even if the debtor is eligible for the CRP program and his bid is accepted which would enable him to receive a net CRP payment of approximately $50.00 per acre per year, the Court finds as a fact that the debtor needs the 1988 rent now held by the receiver to pay the expenses necessary for preparation of the ground for entrance into the CRP program. In a memorandum opinion filed contemporaneously with this one, this Court has found that the debtor has no right to the 1988 rents and the Bank has a validly perfected interest in those rents. Therefore, this Court must find as a fact that the debtor has no funds available to prepare the land for entrance into the CRP program in 1989.

This action has been brought under 11 U.S.C. § 543 which requires, in general, a custodian, which a receiver is, to deliver the property to the debtor in possession and file an accounting with the Court. However, that statutory section permits the Bankruptcy Court, after notice and hearing, to excuse compliance with the turnover provisions "if the interests of creditors ... would be better served by permitting a custodian to continue in possession, custody or control of such property." 11 U.S.C. § 543(d)(1). This debtor's Chapter 11 plan depends for its implementation on enrollment in the CRP program with a net benefit to the estate of $50.00 per acre per year. The debtor has no funds to farm the land during 1989. The debtor has no funds available, either from the receiver or otherwise, to prepare the land for participation in the CRP program. The debtor has presented no credible evidence of his eligibility or his land's eligibility for enrollment in the CRP program. There are significant property tax payments unpaid. The contract vendor of this land upon which the Bank has an inferior lien, has been unpaid for several years. If the receiver remains in place, the funds in the hands of the receiver will be used for payment of real estate taxes and for bringing current the land contract which is prior in right to the Bank's lien.

The Court concludes that the evidence presented by the creditors that it is in the best interests of all of the creditors for the custodian to remain in possession out-

weighs the evidence presented by the debtor that he would like to have the property back and would like the opportunity to enroll in the CRP program and would like the opportunity to pay these creditors off over a long period of time. The debtor has insufficient funds available to make even the now proposed plan work in its first year and his hope for enrollment in the CRP program seems speculative at best.

This Court concludes that it is in the best interests of the creditors that the custodian remain in possession. Separate journal entry shall be filed.