DYER, Senior Circuit Judge:
 

 This appeal involves the turnover of a cash fund under 11 U.S.C. § 542, claimed by a chapter 11 trustee in a reorganization proceeding as property of the debtor’s estate, after a prepetition levy by the Internal Revenue Service (IRS) to seize the property from a third party. The district court, on appeal from the bankruptcy court, found that the trustee is entitled to the fund, relying on
 
 United States v. Whiting Pools,
 
 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). 123 B.R. 661. We affirm.
 

 I. BACKGROUND
 

 Challenge Air International, Inc. operated a commercial airline out of Miami, Florida. In accordance with an agreement with American Express Travel Related Services Co., Inc., Challenge Air accepted American Express Cards for the purchase of its airline services. American Express was required under the agreement to pay Challenge Air an amount equal to the amount of the charges less an applicable discount rate. Under specified circumstances, American Express had the right to withhold reimbursement payments to offset its customer claims. The agreement was in effect from February 1, 1987. Challenge Air ceased its airline services on September 30, 1987.
 

 The amount of Challenge Air’s unpaid taxes was $151,248 for the first quarter of 1987 and $148,902 for the second quarter. The IRS demanded payment from Challenge Air after the amounts due were assessed. Challenge Air made no payment to the IRS in connection with the assessment. On October 27 and 28, 1987, the IRS filed and recorded notices of tax liens against Challenge Air’s property. The IRS served a notice of levy on American Express on October 28, 1987 with regard to the unpaid tax liability of Challenge Air. The fund held by American Express on that date was in the amount of $204,979. American Express owed Challenge Air approximately $162,000 pursuant to the existing agreement.
 

 The notice of levy informed American Express that Challenge Air owed $456,-456.46 in federal taxes and that the levy attached to “[a]ll property, rights to property, money, credits, and bank deposits” owned by Challenge Air and possessed by American Express, as well as “all money or other obligations” owed by American Express to Challenge Air. The levy demanded payment of Challenge Air's tax liability “or any smaller amount” that American Express owed to Challenge Air.
 

 
 *386
 
 From February 1987, American Express exercised its right to withhold payments from Challenge Air pursuant to the agreement. American Express believed that it faced continuing liability to its cardholders; therefore, American Express did not honor the tax levy by releasing the reserve fund. From the time the IRS served its notice of levy until June 1989, American Express continued to set off chargebacks for customer credits against the fund.
 

 On November 23, 1987, Challenge Air filed a petition for relief under Chapter 11 of the Bankruptcy Code. On March 13, 1989, the bankruptcy court appointed Robert L. Roth as the airline’s trustee in the reorganization proceeding.
 

 II. STATEMENT OF THE CASE
 

 On April 24, 1989, the debtor and its trustee initiated the present action against the IRS and American Express. This bankruptcy adversary proceeding presented no factual dispute, and was submitted to the bankruptcy court for a decision based on the parties’ trial briefs. The two contested legal issues were: whether the fund held by American Express should be paid to Challenge Air or to the IRS, and whether American Express had to pay interest on the fund. Challenge Air and its chapter 11 trustee prevailed in the declaratory action and turnover action, as the fund held by American Express, including interest, was property of the chapter 11 debtor’s estate. American Express turned over to the trustee the sum of $202,101.33.
 

 The IRS appeals the district court’s order which affirmed the judgment of the bankruptcy court in favor of Challenge Air International, Inc. and the court’s determination in favor of American Express under 26 U.S.C. § 6332(d), finding no liability for tax, interest or penalties under § 6332(d) of the I.R.C. of 1986.
 

 III. ANALYSIS
 

 A.
 
 Turnover under Section 542
 

 Whiting Pools
 
 controls the outcome of this case. The Court in
 
 Whiting Pools
 
 held that the reorganization estate includes property of the debtor that has been seized by a secured creditor prior to the filing of a petition for reorganization. 462 U.S. at 209. Section 541(a) of the Bankruptcy Code, 11 U.S.C. § 101
 
 et seq.,
 
 defines the extent of property of the debtor’s estate: “the following property, wherever located ... all legal or equitable interests of the debtor in property as of the commencement of the case.” Section 542(a) requires turnover to the trustee of property of the estate.
 
 Whiting Pools
 
 is dispositive on the issue of whether the debtor’s right to turnover prevails over the interest acquired by the IRS through its prepetition levy on the debtor’s property.
 

 Section 542 simply requires the Service to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor’s efforts to reorganize.
 

 462 U.S. at 212, 103 S.Ct. at 2317. Thus, the Court made it clear that the IRS does not have any special immunity from the reach of § 542.
 
 Id.
 
 at 209, 103 S.Ct. at 2315.
 

 The government’s attempt to distinguish this case from
 
 Whiting Pools
 
 is based on a distinction between tangible property and cash equivalent property. The government asserts that its tax levy accomplished a seizure of the debtor’s right to payment, unlike a levy on tangible property after which a taxpayer retains rights of redemption and to any surplus from a sale. This distinction,- however, does not require a departure from
 
 Whiting Pools
 
 (property essential to the running of the business included in the reorganization estate through § 542(a)). The government relies on the reasoning of
 
 Cross Electric Co. v. United States,
 
 664 F.2d 1218 (4th Cir.1981). The property right seized by the IRS in that case was the debtor’s right to collect an account receivable.
 

 However, the direct conflict between
 
 Cross Electric
 
 and
 
 Whiting Pools,
 
 674 F.2d 144 (2nd Cir.1982), was the basis for granting certiorari to review
 
 Whiting Pools.
 
 462 U.S. at 202, 103 S.Ct. at 2312. Had the Supreme Court intended to restrict
 
 *387
 
 its holding* to situations involving tangible saleable property, it either would have not recognized a conflict between
 
 Cross Electric
 
 and
 
 Whiting Pools I
 
 and refused to grant certiorari, or it would have, at the very least, indicated that no conflict existed between the two decisions in view of the different types of property involved.
 

 The
 
 Whiting Pools
 
 decision authorized turnover of the debtor’s property held by the IRS to maximize the estate in order to facilitate the debtor’s reorganization, and does not rest on such a distinction in the nature of the seized property as the government contends. The bankruptcy court rejected the government’s contention that a levy on cash or cash equivalents, unlike the levy on tangible property in
 
 Whiting Pools,
 
 leaves the debtor with no rights in the property. We agree.
 

 The transfer of physical possession of the seized property to the IRS prior to the debtor’s bankruptcy was clearly irrelevant to the determination made in
 
 Whiting Pools.
 
 The enforcement provisions of the Internal Revenue Code of 1954 [26 U.S.C. §§ 6321-6326] “do not transfer ownership of the property to the IRS.”
 
 Id.
 
 462 U.S. at 210, 103 S.Ct. at 2316.
 
 See United States v. Sullivan,
 
 333 F.2d 100, 116 (3rd Cir.1964) (“the Commissioner acts pursuant to the collection process in the capacity of lienor as distinguished from owner”).
 

 In support of its position that its constructive possession of the right to payment obliterates all rights of the debtor, the government relies on
 
 United States v. Nat’l Bank of Commerce,
 
 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). We believe that case is more persuasive to support the trustee’s position that the constructive possession by the IRS does not preclude turnover, as
 
 ownership
 
 of the property has not been determined by the levy.
 

 The administrative levy has been aptly described as a ‘provisional remedy.’ ... In contrast to the lien-foreclosure suit, the levy does not determine whether the government’s rights to the seized property are superior to those of other claimants; it, however, does protect the government against diversion or loss while such claims are being resolved. (Citation omitted).
 

 Id.
 
 at 721.
 

 The government also relies, in part, on
 
 Phelps v. United States,
 
 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975).
 
 Phelps
 
 was distinguished by
 
 Whiting Pools,
 
 462 U.S. at 206 n. 13, 103 S.Ct. at 2314 n. 13.
 
 Phelps
 
 was decided under the old Bankruptcy Act, where jurisdiction of the bankruptcy court was dependent on the
 
 posses-sory
 
 interest of the debtor in property. In addition, because
 
 Phelps
 
 involved a liquidation situation, it is not controlling on the question of use of property in a reorganization proceeding.
 

 Therefore, we find no reason to depart from
 
 Whiting Pools
 
 based on the IRS’ theory of its having constructive possession of the fund held by American Express after the levy and prior to the filing of Challenge Air’s petition for reorganization. 462 U.S. at 207-210, 103 S.Ct. at 2314-2316. In this respect, we also find no merit in the government’s argument that the seized fund is property in which the debtor holds only bare legal title and therefore is not subject to turnover.
 
 [1]
 

 B.
 
 Liability of American Express under Section 6332(d)
 

 The bankruptcy court found that the debtor, Challenge Air, possessed a right under 11 U.S.C. § 542(a) to the fund held by American Express, and concluded, without discussion, that American Express was not liable to the IRS for tax, interest or penalties under 26 U.S.C. § 6332(d) [failure to honor tax levy]. The government contends that the determination of tax liability of a nondebtor was beyond the jurisdiction of the bankruptcy court. However, the government argues that this court may find that American Express is liable for failure to honor the tax levy, if this court
 
 *388
 
 holds in favor of the IRS that the levy prevented the right to payment from becoming property of the debtor’s estate. Our holding supports the opposite position, that the levy accomplished a seizure but not a conclusive transfer of ownership to the IRS.
 

 We note that the record contains no factual findings on the separate disputed issues between American Express and the IRS. Nor were the claims of these parties from the time of the levy to the bankruptcy filing relevant to the court’s conclusion. American Express argues that the government could not assert any right to payment of the reserve, which was subject to customer chargebacks, since Challenge Air had no right to demand payment of the reserve held by American Express on October 28, 1987. The government concedes that at the time of the levy its rights in the property vis-a-vis American Express may have been subject to dispute.
 

 Jurisdiction of the bankruptcy court is limited to matters affecting the estate and the parties’ conflicting claims to estate property.
 
 Gallucci v. Grant (In re Gallucci),
 
 931 F.2d 738, 742 (11th Cir.1991) (turnover action);
 
 cf. United States v. Huckabee Auto Co.,
 
 783 F.2d 1546, 1549 (11th Cir.1986) (tax liabilities of nondebt-ors).
 

 The limited scope of this dispute concerns only those matters over which the bankruptcy court had jurisdiction. The court resolved the dispute concerning whether the IRS or the debtor had a right to the fund, to which American Express claimed no right. The government did not contest (in fact, accepted) American Express’ right to retain the reserve and withhold such sums that were due it under its contract. The extent of the government’s claim was that amount which the bankruptcy court has correctly determined to be property of the debtor subject to turnover under 11 U.S.C. § 542. No determination of any aspect of the dispute was made by the court for the period of time from the date of the levy to the date of the bankruptcy filing.
 

 We agree with the bankruptcy court’s legal conclusion that the fund subject to the levy after chargebacks to American Express customers was required to be turned over to the trustee, and, therefore, find that the court had jurisdiction and correctly denied the IRS relief on its Section 6332 claim regarding American Express from the date of the bankruptcy filing.
 

 AFFIRMED.
 

 [1]
 

 .
 
 See
 
 discussion of legislative history § 541(d);
 
 Whiting Pools,
 
 462 U.S. at 204 n. 8, 103 S.Ct. at 2313 n. 8. (excluding property of others in which the debtor had some minor interest such as a lien or bare legal title).