In re SIGMUND LONDON;
INC., Debtor.

Kenneth P. SILVERMAN, as Chapter 7
Trustee for the Estate of Sigmund
London, Inc., Plaintiff,

v.

JOHNSON CONTROLS, INC. and United
States of America, Department of Inter-
nal Revenue Service, Defendants.

Bankruptcy No. 189–91283–352.
Adv. No. 191–1303.

United States Bankruptcy Court,
E.D. New York.

May 8, 1992.

Finkel, Goldstein, Berzow & Rosenbloom by Gary I. Selinger, New York City, for Chapter 7 Trustee.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Shari L. Berlowitz, U.S. Dept. of Justice, Trial Atty., Tax Div., Washington, D.C., for defendants.

### DECISION ON MOTION FOR SUMMARY JUDGMENT

MARVIN A. HOLLAND, Bankruptcy Judge:

Kenneth P. Silverman, the Chapter 7 trustee of the estate of Sigmund London, Inc., (hereinafter "Trustee"), filed a motion for a summary judgment pursuant to Fed. R.Civ.P. 56 as made applicable by Fed. R.Bankr.P. 7056 against the Internal Revenue Service (hereinafter "IRS") declaring that he is entitled to the sum of $27,000 owed by Johnson Controls to the Debtor and that was subject to a pre-petition tax levy pursuant to 26 U.S.C. § 6331. We find in favor of the IRS and hold that it is entitled to the aforementioned sum.

These proceedings are subject to bankruptcy court jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and the Order of Referral of Matters to Bankruptcy Judges of this District, 69 B.R. 186. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A); (E) and (O).

### Statement of Facts

The facts of this case are not disputed.

1. Prior to the filing of the petition in bankruptcy on behalf of the debtor herein, Johnson Controls retained the debtor to perform electrical contracting services. The services were performed and there is an admitted balance owed in the sum of $27,000.

2. An involuntary petition pursuant to Chapter 7 of the Bankruptcy Code was filed against the Debtor on April 21, 1989, and the order of relief was entered on May 17, 1989. The Trustee was appointed on May 23, 1989. On April 12, 1989, prior to the filing, the IRS had issued a notice of levy in the amount of $1,347,996.73 and served it upon Johnson Controls.

3. Post-petition, the Trustee demanded that Johnson Controls remit to him as the Debtor's Chapter 7 Trustee the amount due and owing. In face of the conflicting demands, Johnson Controls did not surrender the money.

4. On July 8, 1991, the Trustee commenced this adversary proceeding against both Johnson Controls and the IRS seeking turnover of the funds from Johnson Controls.

5. Johnson Controls filed an answer, counter-claim and cross-claim which in essence sought to interplead the Trustee and the IRS to determine to whom the funds

should be disbursed. The IRS filed an answer objecting to the relief requested.

6. On November 15, 1991 the Trustee filed a motion for summary judgment. The motion reveals that the parties reached an agreement pursuant to which Johnson Controls would turn over the amount in question to the Trustee in escrow pending this court's determination and withdraw its counter-claim and cross-claim.

### Parties Positions

The Trustee takes the position that the property on which the IRS levied is property of the estate pursuant to 11 U.S.C. § 541(a)(1) and that it remained property of the estate under *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (hereinafter *"Whiting Pools"*) and numerous lower court decisions applying the reasoning of Whiting Pools to disputed property in the nature of cash or cash equivalent. The Trustee seeks therefore a turnover of the money pursuant to 11 U.S.C. § 542(a), which, if successful, would allow him to subordinate the rights of the IRS to those of other priority creditors pursuant to 11 U.S.C. § 724(b).

In *Whiting Pools* the Supreme Court held that "property of the estate" included tangible personal property of the debtor which had been levied upon by IRS pre-petition, and that the debtor could regain possession of this property upon providing IRS with adequate protection.

The IRS argues that *Whiting Pools* is not controlling since it dealt with tangible property while the property herein is intangible. The IRS advances in support of its position a line of lower court decisions acknowledging this distinction.

### DISCUSSION

While *Whiting Pools* appears to have settled the issue with respect to tangible property, lower courts are split on its application to intangible property. See *United States v. Challenge Air International, Inc. (In re Challenge Air)*, 952 F.2d 384 (11th Cir.1992); *In re Anaheim Electric Motor*, 137 B.R. 791 (Bankr.C.D.Cal.1992);

*Brown v. Evanston Bank (In re Brown)*, 126 B.R. 767 (N.D.Ill.1991); *Hebermehl v. United States (In re Hebermehl)*, 132 B.R. 651 (Bankr.D.Colo.1991), and cases cited therein.

### I.

■ Before addressing the dispute at bar we must clarify the nature of the property involved and identify the nature of the property rights asserted. Section 541(a) provides that the debtor's "estate is comprised of all the following property, wherever located and by whomever held: (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Section 542(a) provides in turn that "an entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell or lease ... shall deliver to the trustee, and account for, such property ... unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). Read together, that language mandates that turnover can be obtained only with respect to property in which the estate has an interest as of the commencement of the case. See *United States v. Whiting Pools, Inc.*, 674 F.2d 144, 157 (2d Cir.1982), *aff'd* 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983).

■ Both parties herein failed to provide an analysis of the property rights involved. The Trustee blindly asserts that the case law provides that filing of notice levy by the IRS does not operate to divest the estate of its interest in the property. *In re Challenge Air*, 952 F.2d 384 (11th Cir. 1992); *In re Suppliers, Inc.*, 41 B.R. 520 (Bankr.E.D.Ky.1984); *In re AIC Industries, Inc.*, 83 B.R. 774 (Bankr.D.Colo.1988); *In re Cleveland Graphic Reproduction, Inc.*, 78 B.R. 819 (Bankr.N.D.Ohio 1987); *Matter of All–Way Services, Inc.*, 73 B.R. 556 (Bankr.E.D.Wis.1987); *In re Dunne Trucking Co.*, 32 B.R. 182 (Bankr. N.D.Iowa 1983). The IRS correctly points out that the Trustee, as well as the decisions that support his position, failed to identify the interest that is retained by the

estate subsequent to the service of notice of levy on intangible property.

The flaw in the Trustee's position is that he fails to distinguish between what is and what is not property of the estate. The money, which is the subject of this proceeding, was never property of the estate. The estate never had title to the money and the estate never had possession of the money. Money is an intangible, see 87 N.Y.Jur.2d, Property, § 2 (1990 & 1991 Supp.) title to which follows possession, see 54 Am.Jur. 2d, Money § 6 (1971 & 1991 Supp.).

What the Trustee had was an interest denominated "account receivable" for accounting purposes, and "chose in action" for legal purposes. "A chose in action is a personal right, not reduced to possession, but receivable by suit at law. The term is one of comprehensive import and includes an infinite variety of contracts, covenants, and promises which confer on one party a right to recover a personal chattel or a sum of money from another by action." See, 87 N.Y.Jur.2d, Property § 3 (1990 & 1991 Supp.); 73 C.J.S., Property, § 22. "Property or money to which the Debtor has only the right of possession rather than actual possession is a chose in action." *Flournoy v. Pate (In re Antley)*, 18 B.R. 207, 210 (Bankr.M.D.Ga.1982).

## II.

■ The second step in our analysis is addressed to the effect of the service of the IRS' notice of levy on Johnson Controls.

The debtor's chose in action consists of its right to collect its receivable from Johnson Controls absent an IRS levy. This is a right which would have become property of the estate pursuant to section 541(a)(1) had it not been levied upon. See, *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1101 (2d Cir.1990); *LTV Steel Co. v. Graham Co. (In re Chateugay Corp.)*, 78 B.R. 713, 725 (Bankr.S.D.N.Y. 1987). Since the IRS served the notice of levy on Johnson Controls pre-petition, the trustee is left with no enforceable rights as to this receivable.

We disagree with the Trustee's position that *Whiting Pools* controls this dispute. But *cf., In re Challenge Air*, 952 F.2d 384 (11th Cir.1992); *Anaheim Electric*, 137 B.R. 791. In *Whiting Pools* the debtor was in possession of the property and had legal title to it at the time of the seizure, see *Whiting Pools*, 674 F.2d at 145, 157; 103 S.Ct. at 2315. The debtor herein had no legal title to the money and was never in possession of it. The two principles of *Whiting Pools* which are pertinent herein are the holding that "[t]he Internal Revenue Code's levy and seizure provisions, 26 U.S.C. §§ 6331 and 6332 ... are provisional remedies that do not determine the service's rights to the seized property, but merely bring the property into the service's legal custody", and the further holding, that "those provisions do not transfer ownership of the property to the IRS", 103 S.Ct. at 2316. In the case before us, the question of whether the levy divests the debtor of title cannot arise since, as we have noted, the debtor never had possession of the fund sufficient for it to have had title. However, we are still faced with the question of whether such levy effectively prevented the debtor's chose in action from ever ripening into an interest superior to that of the IRS. We answer this latter question in the affirmative.

■ Cases involving a chose in action are inherently different from cases dealing with tangible property. While the levy and seizure provisions of the Internal Revenue Code do not operate to divest ownership of the debtor, see *Whiting Pools*, 103 S.Ct. at 2316; *United States v. National Bank of Commerce*, 472 U.S. 713, 721, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985); *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977); *United States v. Sullivan*, 333 F.2d 100, 117 (3d Cir.1964), the language of the statute results in a termination of the debtor's chose in action. Intervening bankruptcy aside, the delinquent taxpayer has no right to sue the third party who was served with the notice of levy, for surrender of the property. All the delinquent taxpayer is left with are the rights enumerated in the Internal Revenue Code. See, e.g., *United*

*States v. National Bank of Commerce,*
472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565
(1985); *In re Brown,* 126 B.R. at 770. See
also, 26 U.S.C. §§ 6335(b), 6337, 6342(b).
As section 6332(a) explicitly states: "any
person in possession of (or obligated with
respect to) property or rights to property
subject to levy ... shall, upon demand of
the Secretary, surrender such property or
rights (or discharge such obligation) to the
Secretary." 26 U.S.C. § 6332(a). Further-
more, section 6332(d)(1) provides that
"[a]ny person who fails or refuses to sur-
render any property or rights to the prop-
erty, subject to levy, upon demand by the
Secretary, shall be liable in his own person
and estate to the United States", and sec-
tion 6332(e) further provides that "[a]ny
person in possession of ... property or
rights to property subject to levy upon
which a levy has been made who, upon
demand ... surrenders such property ...
to the Secretary ... shall be *discharged*
from any obligation or liability to the delin-
quent taxpayer." (emphasis added).

In view of the statutory language set
forth above, the notice of levy effectively
terminates the debtor's chose in action and,
to the extent of payment by Johnson Con-
trols to IRS, converts the chose in action
into payment of the Debtor's liability for
the unpaid tax pursuant to which the lien
was filed and the levy was made.

### III.

■ The next question is whether the
Debtor's rights to redeem the property and
to the surplus resulting from a tax sale, as
enumerated in the Internal Revenue Code,
are sufficient property interests so as to
subject the property to turnover pursuant
to § 542(a). We think they do not.

First, we doubt whether a chose in action
qualifies as "property that the trustee may
*use, sell* or *lease.*" 11 U.S.C. § 542(a) (em-
phasis added). As an intangible property

interest, a chose in action cannot be "used"
or "leased". It may be amenable to a sale
subject to the facts and circumstances of
each case. There is no doubt that in some
instances accounts receivables could be dis-
counted. But this is not such a case.
Johnson Controls has not only acknowl-
edged the debt, but has stated its willing-
ness to pay it to an escrowee. Sale of such
a right is an exercise in frivolity. Com-
pare, *Anaheim Electric,* 137 B.R. 791.
That is especially so since such a sale
would not further the goals that are in the
heart of the broad definition of property of
the estate. See, *Whiting Pools,* 103 S.Ct.
at 2312–3; *In re Challenge Air,* 952 F.2d
384 (11th Cir.1992).

■ It should be noted that while the
*Brown* court determined that the debtor
retained no "identifiable residual interest
which could conceivably bring the property
into the bankruptcy estate", *In re Brown,*
126 B.R. at 776, the court attempted to
distinguish its holding on cash or cash
equivalent property from accounts receiva-
ble. *In re Brown,* 126 B.R. at 771, n. 9.
In the *Brown* case the IRS levied on three
bank accounts maintained by the debtor:
two savings accounts and a certificate of
deposit. The general rule in New York,
however, is that legal title to money depos-
ited in a bank account, and that rule applies
for the most part to savings account, is
vested in the bank while the depositor
holds a chose in action against the bank.
See, *Barnhill v. Johnson,* — U.S. —,
112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992);
*Peoples Westchester Savings Bank v.
FDIC,* 961 F.2d 327, 330 (2d Cir.1992). The
relationship between the bank and the de-
positor is one of a debtor and creditor.
See, N.Y.Jur.2d, Banks and Financial Insti-
tutions §§ 229, 238 (1980 & 1991 Supp.);
Clark, *The Law of Bank Deposits, Collec-
tions and Credit Cards* (1981) at 11–3.[1]

**1.** In *Flynn's Speedy Printing v. Southtrust Bank
(In re Flynn's Speedy Printing),* 136 B.R. 299
(Bankr.M.D.Fla.1992) it was stated that the debt-
or retained the benefits and burdens of *owner-
ship* in the funds deposited in a demand ac-
count. Unfortunately the court did not elabo-

rate on the nature of a "demand account" nor
on the relevant Florida law. To the extent that
Florida law differs from New York law regard-
ing title to monies deposited in a bank account,
we find it not controlling herein. See also,
*Anaheim Electric,* 137 B.R. at 796 ("debtor's

■ We agree with the *Brown* court that accounts receivable, unlike cash, may be sold at a tax sale and therefore may entitle the debtor to receive any remaining surplus. Furthermore, accounts receivable, unlike cash, may be subject to redemption.[2] We disagree however with the *Brown* court's inherent assumption that money on deposit in a bank is cash equivalent while accounts receivable are not. We believe that under New York law and for bankruptcy turnover purposes, money on deposit in a bank account and accounts receivable should be classified as having the same legal nature.

Although it may be true that as a general rule it is easier to collect against money on deposit in a bank than on accounts receivable, this is not, and may not always be, the case. Some accounts receivable are easily collected while money on deposit with an insolvent bank may be not so easily collectible. In any event, both legal interests, the accounts receivable and the money on deposit, may be subject to a tax sale and both are subject to the debtor's right of redemption. Thus we disagree with the *Brown* court to the extent it intended to apply a different rule of law with respect to accounts receivable than to money on deposit with a bank. The final resolution should rest upon the legal nature of the property and the property interests involved and not upon practical difficulties in collectibility.[3]

Second, the debtor's post-levy rights do not exist as incidents of the debtor's title or other legal right in the underlying property. These rights exist only by virtue of specific provisions of the Internal Revenue Code. We think this is a crucial distinction between a situation involving levy on intangibles and levy on tangibles which are owned or possessed by the debtor. Only in the latter situation does the debtor have interests in the property above and beyond the rights enumerated in the Internal Revenue Code.

In a *Whiting Pools* type situation, the debtor owns and/or possesses seized tangible property. Post-seizure, therefore, the debtor retains his ownership and/or the right to possess the property in addition to the rights enumerated in the Internal Revenue Code. In the situation at bar however, the debtor a-priori had neither title to the property nor possession of it. Therefore the rights conferred by the Internal Revenue Code are the *only* rights to the levied-upon property. These rights naturally flow into the debtor's estate. See, *In re Professional Technical Services,* 71 B.R. 946, 950 (Bankr.E.D.Mo.1987), *rev'd on other grounds,* 1987 WL 47833 (E.D.Mo. 1987).

There is an additional relevant distinction. In case of levy on intangible property the debtor may redeem the specific property levied upon, 26 U.S.C. § 6337; however, that is not the case regarding intangible property such as money on deposit in a bank account or accounts receivables. The debtor has no interest in any specific and identifiable monies that are subject to the IRS levy either prior to or after their surrender to the IRS. The only property right the debtor can redeem is the chose in action against the third party holding the funds levied upon, prior to their surrender to the IRS. We do not have to decide here whether the debtor's redemption rights apply to the *underlying* property, since the chose in action was extinguished by the levy and seizure procedure.[4]

interest in the [f]unds would only terminate if ownership of the [f]unds transferred to the Board before the commencement of the case").

2. Subjecting cash to the right of redemption is an exercise in futility. See *In re Professional Technical Services v. I.R.S. (In re Professional Technical Services),* 71 B.R. 946, 950 (Bankr. E.D.Mo.1987), *rev'd on other grounds,* 1987 WL 47833 (E.D.Mo.1987); *Anaheim Electric,* 137 B.R. at 794.

3. We note, however, that the collectibility of accounts receivables, as well as of claims against money deposited in bank accounts, may bear on whether the estate interests in the property, i.e., right to a surplus resulting from a sale and the right to redeem the property, are excluded minor interests or non-excluded non-minor type of interests. See discussion *infra.*

4. Prior to surrender of the funds to the IRS, the IRS holds a chose in action against the third party which may be subject to redemption. After surrender of the funds to the IRS, however,

Third, though we concur with the result reached in *In re Brown,* we prefer to hold that even if the Debtor retained some residual interest in the property levied upon, that interest was not sufficient to require turnover. But *cf. In re Challenge Air,* 952 F.2d 384 (11th Cir.1992).

Section 541(a)(b) speaks in terms of debtor's "interests ... in property" rather than property in which the debtor has an interest, but this choice of language was not meant to limit the expansive scope of the section. The legislative history indicates that *Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title.*

*Whiting Pools,* 103 S.Ct. at 2313, n. 8 (emphasis added).

Where state law bars a debtor from having an interest in an escrow fund, and instead, requires the imposition of a constructive trust on the debtor's reversionary interest ... such minimal or bare legal interest will not support a broad application of the bankruptcy concept of property of the estate.

*In re Rosenshein,* 136 B.R. 368, 372 (Bankr.S.D.N.Y.1992).

Under the specific circumstances of this case the Debtor's right to receive surplus resulting from a sale is inapplicable. However, the Debtor's right to redeem the chose in action is. Nevertheless, we believe it to be "property of others in which the estate has some minor interest", and therefore excluded from the bankrupt's estate. *Cf. In re A.J. Lane & Co., Inc.,* 133 B.R. 264, 269 (Bankr.D.Mass.1991); *Rose v. Commercial National Bank (In re Rose),* 112 B.R. 12 (Bankr.E.D.Tex.1989).

### IV.

■ Next we have to determine when the IRS would be deemed to have completed the levy and seizure procedure. The Trustee relies on cases holding the service of notice of levy pursuant to 26 U.S.C. § 6331 alone insufficient. These courts rely on 26 U.S.C. § 6335(a) which requires

the chose in action is extinguished and the IRS hold the funds themselves, the underlying prop-

the IRS to give a "notice of seizure" combined with 26 U.S.C. § 6502(b) that provides: "[t]he date on which a levy on property or rights to property is made shall be the date on which the notice of seizure provided in section 6335(a) is given." See, *In re Dunne Trucking Co.,* 32 B.R. 182, 188 (Bankr.N.D.Iowa 1983); *In re AIC Industries, Inc.,* 83 B.R. at 777; *In re Suppliers, Inc.,* 41 B.R. 520, 523 (Bankr. E.D.Ky.1984). We disagree as did the *All-Way* court, 73 B.R. at 563 and n. 13 and the *Brown* court, 126 B.R. at 774.

Levy upon tangible property normally is effected by service of forms of levy or notice of levy and physical seizure of the property. Where that is not feasible, the property is posted or tagged. Because intangible property is not susceptible of physical seizure, posting, or tagging, levy upon it is effected by serving the appropriate form upon the party holding the property or rights to property.

*G.M. Leasing,* 429 U.S. at 350, 97 S.Ct. at 627.

The bank misinterprets the statute and regulations by failing to distinguish between levies on tangible property and levies on intangible property ... The Government cannot physically seize intangible property. The regulations, therefore, clearly provide for levy by proper service of notice. [26 C.F.R. § 301.6331–1(a)(1) ].

*United States v. Donahue,* 905 F.2d 1325, 1329 (9th Cir.1990).

And as the court concluded:

Section 6502(b) and 6335(a) of the statute determine when a levy is made on tangible property, and section 301.6331–1(a)(1) of the regulations determines when a levy is made on intangible property ... In the case of intangible property, a levy is made for all purposes ... by serving a notice of levy.

*Donahue,* 905 F.2d at 1330. See also, *In re Rose,* 112 B.R. 12 (Bankr.E.D.Tex.1989); *Anaheim Electric,* 137 B.R. at 795 n. 5.

erty which *was* the subject of the no longer existing chose in action.

## V.

 Even were we to hold that the estate retains some property interest that qualifies for § 542(a) turnover, the IRS would still prevail in light of its right to receive adequate protection. The IRS is a secured creditor vis-a-vis the debtor regardless of the filing of a notice of a tax lien. See 26 U.S.C. §§ 6321, 6323(d), 11 U.S.C. §§ 101(37), 506; *Whiting Pools*, 103 S.Ct. at 2312. As the *Whiting Pools* court held "[t]he IRS, under § 363(e), remains entitled to adequate protection for its interests." 103 S.Ct. at 2317; and the Court of Appeals for this Circuit ordered: "the bankruptcy court should consider whether a turnover order is appropriate under present circumstances and, if it decides in the affirmative, *what protection should be afforded to the United States.*" 674 F.2d at 160 (emphasis added).

The Trustee's papers clearly evidence that he has no intention of protecting the IRS' interest. To the contrary, the sole purpose of this adversary proceeding is to subordinate the IRS to other priority creditors pursuant to 11 U.S.C. § 724(b). The result is that some or all of the funds held in escrow would be distributed to priority creditor at the expense of the IRS. In these circumstances the Trustee is clearly incapable of providing the IRS with adequate protection. See, 11 U.S.C. § 361. Furthermore, under these circumstances, where Johnson Controls has deposited the fund with an escrowee [5] and the case is one under Chapter 7 of the Bankruptcy Code, we fail to see what would constitute adequate protection short of surrender of $27,000 to the IRS.[6]

## CONCLUSION

Trustee's motion for summary judgment is denied. IRS did not cross-move for summary judgment but rather in its amended answer requested that "this Court determine the rights, title, and interest of the parties' claims to the funds at issue." Since both parties agreed that no question of fact is involved and that this dispute is suitable for resolution pursuant to Fed. R.Bankr.P. 7056, the court, pursuant to Fed.R.Civ.P. 52(c) as made applicable by Fed.R.Bankr.P. 7052, concludes that $27,000 held in escrow should be turned over to the IRS and directs the IRS to settle a judgment to that effect within ten days.

---

5. The deposit of funds with an escrowee is relevant to the extent it shows that collection on the chose in action would face no major hurdles. It is used as an indicia that the value of the chose in action is the full $27,000.00 because there would be no need for collection proceedings or for its sale at a discount, and that there is no real risk associated with the third party's ability to pay.

6. In light of our conclusion we do not have to reach the sovereign immunity issue. See *United States v. Nordic Village, Inc.*, —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). In any event, this issue was not raised, argued or briefed by the parties.