**In re Angelo ÀMODIO, Alleged Debtor.**

**Bankruptcy No. 92–63411.**

United States Bankruptcy Court,
N.D. New York.

April 21, 1993.

Coupe, Siegel, Hester, Stephens & Kahler (Ann W. Manion, of counsel), Utica, NY, for Adirondack Bank.

James F. Selbach, Syracuse, NY, for alleged debtor.

### MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Before the Court is the application of the Alleged Debtor Angelo Amodio for an Order directing the turnover of certain funds in the amount of $1,925 currently held in escrow and alleged to be property of his estate. The application is opposed by Adirondack Bank ("Bank") on the ground that the Bank holds title to the funds. Oral argument was heard on February 16, 1993, and following the receipt of memoranda of law from the parties the matter was submitted for decision on March 2, 1993.[1]

---

1. The Court notes that this action is essentially one brought to recover money, which in part requires a determination as to the extent of a lien. As such, it should have been properly

## JURISDICTION

The Court has core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(E).

## FACTS

On or about January 3, 1992, the parties entered into a security agreement and the Bank filed a UCC–1 financing statement with the Secretary of the State of New York, evidencing the Bank's security interest ("security interest") in "now owned and hereafter acquired accounts (including but not limited to accounts receivable and contract rights), chattel paper, documents and instruments ..." of Amodio d/b/a Amodio Real Estate and Insurance ("Amodio"). On or about September 3, 1992, a residential real estate closing occurred, for which Amodio earned a commission in the amount of $1,925 (the "funds") for brokering the sale. Before Amodio actually received his commission, however, the Bank informed the seller ("seller") of the real estate by letter dated September 1, 1992 ("letter") that, because the Bank held a security interest in and a lien against "any amounts owed to Amodio Real Estate by any third party," the funds in question should be remitted directly to the Bank. (*See* Letter from Bank's Attorneys to Guy and Vita Rinaldi dated September 1, 1992 attached to Amodio's moving papers). The instant dispute over the funds ensued and, consequently, the law firm of McMahon, Grow & Getty, attorneys for the seller, has held the funds in escrow since the transaction closed.

On November 3, 1992, an involuntary petition was filed against Amodio under Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). An order for relief has yet to be entered.

## ARGUMENTS

The Bank claims that it is entitled to the funds by virtue of its security interest in all of Amodio's accounts receivable. Spe-

cifically, the Bank points to paragraphs 8 and 9 of the security agreement, which provide generally that upon default, the Bank shall have the rights and remedies of a secured party under the New York Uniform Commercial Code, N.Y.U.C.C. §§ 1–101–9–507 (McKinney 1993) ("NYUCC"), and may take possession of Amodio's accounts receivable and direct third parties to make payments on same directly to the Bank. It is undisputed that Amodio was in default as of September 1, 1992. The Bank essentially contends, therefore, that title to the funds in question passed to the Bank when it made the demand upon the seller for payment on September 1, 1992.

Amodio argues that the Bank's position is not supported by the NYUCC, and that title to the funds never passed to the Bank because, among other things, the Bank never took possession of same. Accordingly, Amodio maintains that he holds title to the funds and that turnover is warranted because the continued possession of same by seller's attorney constitutes a violation of the automatic stay imposed by Code § 362.

## DISCUSSION

The parties correctly agree that the funds in question are susceptible to turnover only if they became part of Amodio's bankruptcy estate. Code § 542, under which Amodio is presumably moving, provides generally for the turnover of property of the estate. *See* 11 U.S.C. § 542. Property of the estate is defined by Code § 541(a)(1) as "all legal or equitable interests of the debtor in property as of the commencement of the case."

In *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209–10, 103 S.Ct. 2309, 2315–16, 76 L.Ed.2d 515 (1983), the Supreme Court held that property of the estate includes the debtor's legal or equitable interests in property which has been seized or levied upon by a secured creditor pre-

brought as an adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7001(1) and (2). However, "'the Court chooses to resolve the dispute, rather than delay its adjudication, and proceed to the merits herein, observ-

ing that neither (party) has raised this procedural defect.'" *In re Centolella*, 142 B.R. 624, 625 n. 1 (Bankr.N.D.N.Y.) (quoting *In re Roberts Hardware Co.*, 103 B.R. 396, 398 n. 3 (Bankr. N.D.N.Y.1988) (other citation omitted)).

petition. This, of course, begs the question of whether the debtor has any such interests as of the commencement of the case in property which has been seized or ·levied upon pre-petition. In *Whiting Pools*, the Internal Revenue Service ("IRS") seized various tangible personal property of the debtor pre-petition to satisfy a tax lien. *Id.* at 200, 103 S.Ct. at 2311. In determining whether such property was property of the estate and thus subject to turnover, the Court stated that "if a ... levy or seizure transfers ... ownership of the property seized, [Code] § 542[ ] may not apply." *Id.* at 209, 103 S.Ct. at 2316. The Court then proceeded to find that the IRS's seizure of the property had not divested the debtor of ownership because the relevant provisions of the Internal Revenue Code ("IRC") which allowed the IRS to seize the property "are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody." *Id.* at 211. Therefore, because the property had been seized but not sold, it became part of the debtor's bankruptcy estate and had ·to be turned over to the debtor. *Id.*

The *Whiting Pools* decision is devoted exclusively to issues concerning the seizure of, and levy upon, tangible property. As a result, there is confusion among courts as to the extent *Whiting Pools* is applicable to cases which involve intangible personal property such as cash and accounts receivable. Some courts have concluded that intangible property such as cash or cash equivalent property is not subject to turnover because a pre-petition levy by the IRS divests the debtor of any interest therein. *See, e.g., In re Anaheim Electric Motor, Inc.,* 137 B.R. 791, 795 (Bankr.C.D.Cal. 1992); *In re Brown,* 126 B.R. 767 (N.D.Ill. 1991); *In re Rose,* 112 B.R. 12 (Bankr. E.D.Tex.1989); *In re Paul,* 85 B.R. 850 (Bankr.E.D.Cal.1988); *In re Professional Technical Services, Inc.,* 71 B.R. 946 (Bankr.E.D.Mo.1987), *rev'd on other grounds,* 1987 WL 47833 (E.D.Mo.1987). Other courts reach an opposite result, and hold that cash or cash equivalent property levied upon by the IRS pre-petition remains property of the estate, because ownership of the funds does not pass to the IRS upon levy or seizure. *See, e.g., In re Challenge Air Int'l, Inc.,* 952 F.2d 384, 386–87 (11th Cir.1992); *In re Metro Press, Inc.,* 139 B.R. 763, 764 (Bankr.D.Mass.1992); *In Flynn's Speedy Printing, Inc.,* 136 B.R. 299 (Bankr.M.D.Fla.1992); *In re West Aire, Inc.,* 131 B.R. 871 (Bankr.D.Nev.1991).

The instant case, though similar, is not factually analogous to *Whiting Pools* and its progeny. "In a *Whiting Pools* type situation, the debtor owns and/or possesses seized tangible property. Post-seizure, therefore, the debtor retains his ownership and/or the right to possess the property in addition to the rights enumerated in the Internal Revenue Code." *In re Sigmund London, Inc.,* 139 B.R. 765, 770 (Bankr. E.D.N.Y.1992). In the instant case, however, Amodio never held title to the funds in question because he never had possession of the funds. This is so because "[m]oney is an intangible, see 87 N.Y.Jur.2d, Property, § 2 (1990 & 1991 Supp.) title to which follows possession, see 54 Am.Jur.2d, Money § 6 (1971 & 1991 Supp.)." *Id.* at 768. Therefore, the funds never passed into Amodio's estate. *See id.*

■ However, as Bankruptcy Judge Marvin Holland explained in *Sigmund London,* Amodio nevertheless possessed an interest in the funds which was a "chose in action." " 'A chose in action is a personal right, not reduced to possession, but receivable by suit at law. The term is one of comprehensive import and includes an infinite variety of contracts, covenants, and promises which confer on one party a right to recover a personal chattel or a sum of money from another by action.' " *Id.* (citing 87 N.Y.Jur.2d, Property § 3 (1990 & 1991 Supp.); 73 C.J.S., Property, § 22; and *Flournoy v. Pate (In re Antley),* 18 B.R. 207, 210 (Bankr.M.D.Ga.1982)).

■ Amodio's chose in action was his right to collect his commission from the seller out of the sale price of the property sold. The Bank's letter instructing the seller to remit to it Amodio's commission was essentially a notice of levy on the funds. *See* NYUCC 9–503; *Cf. Sigmund*

*London,* 139 B.R. at 771–72 (IRS deemed to have completed levy by sending notice of levy). As such, it effectively terminated Amodio's chose in action in the funds. *See* NYUCC § 9–503; *Sigmund London,* 139 B.R. at 768–69; *Whiting Pools,* 462 U.S. at 210–11, 103 S.Ct. at 2316–17. Any interest Amodio now retains in his chose of action must stem from rights afforded by the security agreement and/or the NYUCC. *See id.* The NYUCC does grant a debtor residual rights in property which has been seized or levied upon, namely the right to redeem collateral, *see* NYUCC § 9–506, and the right to any surplus resulting from a sale of the collateral, *see id.* at 9–504(2). These rights become property of the bankruptcy estate. *See Sigmund London,* 139 B.R. at 770.

Here, Amodio's right to surplus from a sale of his chose in action by the Bank is inapplicable because sale of a chose in action is essentially meaningless. *See id.* at 769–70 (citing *In re Brown,* 126 B.R. at 767). The only interest Amodio has at this point is his right to redeem, not the funds, but his chose in action against the seller, which is only slightly more meaningful than his right to surplus. *See id.* at 770. *Compare In re Brown,* 126 B.R. at 771 (cash and cash equivalents cannot meaningfully be redeemed or sold, (citing *In re Professional Technical Services, Inc.,* 71 B.R. at 950 and *In re Paul,* 85 B.R. at 853.)). At any rate, this interest is insufficient to require turnover under Code § 542(a) because,

> [s]ection 541(a)(b) (sic) speaks in terms of the debtor's "interests ... in property," rather than property in which the debtor has an interest, but this choice of language was not meant to limit the expansive scope of the section. The legislative history indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title.

*Id.* (quoting *Whiting Pools,* 462 U.S. at 204, n. 8, 103 S.Ct. at 2313, n. 8.). *Accord In re Rosenshein,* 136 B.R. 368, 372 (Bankr.S.D.N.Y.1992). *But cf. In re Challenge Air Int'l, Inc.,* 952 F.2d at 386–87.

Thus, the funds in question are essentially property of the Bank (by virtue of its notice of levy) in which Amodio holds only a minor interest which does not warrant turnover.

Accordingly,

IT IS ORDERED, that Amodio's motion for turnover is denied, and it is further

ORDERED that, within fifteen (15) days following receipt of this Order, McMahon, Grow & Getty shall pay the funds held in escrow to the Bank, at which time that firm, as well as Guy and Vita Rinaldi, shall be released from any and all obligations to Amodio in this matter.