**In re Tommy ESTES, Debtor.**

**Bankruptcy No. 95-31959.**

United States Bankruptcy Court, W.D. Kentucky.

Aug. 2, 1995.

Henry M. Burt, Louisville, KY, for debtor.

William W. Lawrence, Trustee, Louisville, KY.

### MEMORANDUM

DAVID T. STOSBERG, Bankruptcy Judge.

This matter comes before the Court on the Debtor's Request For Creditor, Swope Automotive To Return Property Essential To The Debtor's Reorganization Plan. The Debtor is seeking the return of a vehicle repossessed prepetition. The pleading filed by the debtor, however, is procedurally defective. Bankruptcy Rule 7001(1) provides that an adversary proceeding is a proceeding to recover money or property.

We hereby adopt and incorporate by reference the Memorandum Opinion written by Judge Charles M. Allen of the United States District Court in the case of *In re Carolyn Louise Carter (Liberty National Bank and Trust Co. v. Carolyn Louise Carter)*, Civil Action No. C-93-0728-L(A) (unpublished opinion). (Judge Allen has consented to our publication of this opinion vis-a-vis this Memorandum). In the *Carter* case, Judge Allen directed the Bankruptcy Court for the Western District of Kentucky to discontinue accepting motions seeking turnover in Chapter 13 cases "in direct contravention to the plain and unambiguous language of Bankruptcy Rule 7001." (Memorandum Opinion, at page 747).

In compliance with Judge Allen's directive, we shall enter an Order incorporating this Memorandum and shall remand the Debtor's request based on his failure to file an adversary proceeding.

### ORDER

Pursuant to the findings of fact and conclusions of law set forth in the Court's Memorandum entered this same date and incorporated herein by reference,

IT IS ORDERED that the Debtor's Request For Creditor, Swope Automotive to Return Property Essential to the Debtor's Reorganization, Pay Costs and Attorney's Fees be, and is hereby, **remanded.**

### APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY AT LOUISVILLE

Civil Action No. C 93-0728-L(A)

IN RE:

CAROLYN LOUISE CARTER, Debtor,

LIBERTY NATIONAL BANK AND TRUST COMPANY, Appellant,

v.

CAROLYN LOUISE CARTER, Appellee.

MEMORANDUM OPINION

This case is before the Court on appeal from the United States Bankruptcy Court for

the Western District of Kentucky pursuant to 28 U.S.C. Sec. 158. Appellant/creditor, Liberty National Bank and Trust Company of Louisville (Liberty), appeals from the Bankruptcy Court order directing Liberty to turn over property to Appellee/Debtor Carolyn Louise Carter ("Carter").

In early September 1993, Liberty lawfully repossessed a 1993 Ford Festiva automobile in which it held a security interest. Three weeks later, Carter filed for Chapter 13 bankruptcy protection, listing Liberty as a secured creditor. Through her attorney, Carter also filed on that same day an emergency motion for turn-over of the repossessed automobile. On October 7, 1993, the Bankruptcy Court entered an order granting Carter's motion.

Liberty unsuccessfully moved the Bankruptcy Court to reconsider the turn-over order, arguing that (1) Liberty's interest in the property was not adequately protected; (2) the plan proposed by Carter was not feasible; and (3) the motion for turn-over was procedurally incorrect in that turn-over motions are governed by Bankruptcy Rule 7001 requiring an adversary proceeding. In denying the motion, the Bankruptcy Court reasoned that although Liberty was entitled to adequate protection of its interests, that right did not include a requirement that Carter show a confirmable plan. The Court held that Liberty's interests were adequately protected by the requirements that Carter show proof of insurance and that Liberty's repossession costs take priority over bankruptcy administrative costs. As to the procedural contention, the Court conceded that Liberty might be technically correct, but observed that "the promptness which the current motion practice allows eliminates many problems which an adversary proceedings would bring." November 2, 1993 opinion at 2.

On this appeal, Liberty presses its argument that under Rule 7001 an action by a debtor for the turn-over of money or property in which the debtor has an interest must be initiated by adversary proceeding.[1] Liberty relies on *In re Riding*, 44 B.R. 846 (Bkrtcy.D.Utah 1984), involving a fact pattern very similar to the case at bar. In that case the creditor bank sought relief from an order compelling it to turn over to the debtor a vehicle it had lawfully repossessed prior to debtor's filing for Chapter 13 protection. The Utah District Court discussed the substantive law behind turn-over and summarized the history of turn-over procedure under the 1898 Bankruptcy Act and the 1973 and 1983 Bankruptcy rules. The court stated that "[t]he modern bankruptcy rules provide a mechanism for resolving turnover disputes in a manner that affords the parties a fair opportunity to present their sides of the issue, while promoting efficiency and uniformity in practice." *Riding*, at 859. The court concluded that the bankruptcy rules mandate that the court await commencement of an adversary proceeding before determining whether turn-over should be allowed.

*Riding* has been followed in several cases from different jurisdictions. The Ninth Circuit has held that an action to recover property was procedurally incorrect because it was brought through an ex parte motion instead of the required adversary proceeding. *In re Wheeler Technology, Inc.*, 139 B.R. 235 (9th Cir. BAP 1992). The Seventh Circuit has held that a turn over action is an adversary proceeding that must be commenced by a properly filed and served complaint. *Matter of Perkins*, 902 F.2d 1254 (7th Cir.1990). *In re Ace Industries, Inc.*, 65 B.R. 199 (Bkrtcy.W.D.Mich.1986), the court held that a debtor's motion for turn-over of certain monies and properties should have been brought as an adversary proceeding. *In re Chanticleer Associates, Ltd.*, 592 F.2d 70 (2d Cir.1979), the Second Circuit ruled that the Bankruptcy Court acted beyond its scope by granting a last minute stay to debtor for a modification that was adverse to the creditor, where the stay was subject to the procedural requirements for adverse modification, i.e., an adversary proceeding as provided by the Bankruptcy Act. The Montana District Court observed that the proper procedure for such matters is an adversary proceeding

---

1. Bankruptcy Rule 7001 provides, in pertinent part: "An adversary proceeding is governed by the rules of this Part VII. It is a proceeding in a bankruptcy court (1) to recover money or property, except a proceeding under Sec. 5554(b) or Sec. 725 of the Code, Rule 2019 or Rule 6002."

to determine the validity, priority, or extent of liens. *In re Lincoln,* 144 B.R. 498 (Bkrtcy.D.Mont.1992). *In re Amodio,* 155 B.R. 622 (Bkrtcy.N.D.N.Y.1993), the Court noted that the matter should have been brought as an adversary proceeding, but the Court proceeded to decide the matter because neither party had raised the procedural defect.

Carter argues that despite Rule 7001, the motion proceeding was proper because it has always been common practice in the Western District of Kentucky for a Chapter 13 debtor seeking turn-over to proceed by motion. However, debtor's counsel fails to cite any support for this proposition. Furthermore, for the bankruptcy of the Western District of Kentucky to continue such a practice would be in direct contravention to the plain and unambiguous language of Bankruptcy Rule 7001.

Carter also alleges that there is a split of authority among the circuit and district courts as to whether or not turn-over proceedings must be initiated by motion or adversary proceedings. Once again, however, debtor has failed to cite authority to support the claim. Carter argues that turn-over requests may be made by motion in order to speed up the judicial process. Regardless of any perceived practical advantages, we do not have authority to judicially create exceptions within the rules to allow for a turn-over action to proceed by motion in the interest of judicial economy.

Inexplicably, Carter cites *In re Jackson,* 142 B.R. 172 (Bkrtcy. N.D. Ohio 1992) in support of the claim that a turn-over action may proceed by motion despite Rule 7001. *Jackson,* however, *did* involve an adversary proceeding.[2] Indeed, by employing a complaint plus temporary and preliminary injunctive relief procedures, *Jackson* demonstrates how an adversary proceeding may serve simultaneously the interests of efficiency and due process. In contrast, in the case before the court, the matter was decided via telephonic conference with the creditor having little opportunity to confer with its counsel beforehand.

Carter also supports her argument by pointing to *In re Cox,* 133 B.R. 198 (Bkrtcy. N.D.Ohio 1991), in which the court allowed the debtor's turn-over action to proceed by motion and found that an adversary proceeding was unnecessary. In reaching this conclusion the *Cox* court construed *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), as standing for the proposition that an adversary proceeding is not necessary for a turnover action. We must respectfully disagree with this broad a reading of *Whiting* (which, of course, was governed by 1978 statutory law). The issue of the proper procedure for effecting turn-over was not presented in *Whiting.* Rather, the issue was solely a matter of substantive law, i.e., whether property seized pursuant to an Internal Revenue Service lien should be considered an asset of the estate. There was no occasion for the Court to address the proper procedure, and, indeed, the matter was not even mentioned in passing. The Supreme Court concluded only that the IRS was not exempt from the bankruptcy laws relating to turn-over. Thus, *Whiting* is not applicable to the case at hand.

One last case cited by Carter is *In re Gerwer,* 898 F.2d 730 (9th Cir.1990). This case, too, is distinguishable. In *Gerwer,* the court found the trustee's motion seeking turn-over to be harmless error because the case proceeded under Bankruptcy Rule 6004(c) governing motions for a sale free of liens, which required the observance of Bankruptcy Rule 9014, a catch all provision governing contested matters to which no other rules applied. In the current case Rule 7001 is clearly applicable thus Rule 9014 does not apply.

Carter attempts to distinguish *In re Riding,* on which Liberty relies, by pointing out that the turn-over in that case was initially granted by default. Thus, it is argued that unlike the creditor in *Riding,* Liberty had adequate notice of the hearing, participated therein and had the chance to offer proof and cross-examine witnesses thereby receiving its

---

2. After filing a voluntary Chapter 13 petition, "plaintiffs filed a verified complaint, seeking turnover ... and motion for temporary restraining order." *Jackson* at 174.

day in court. However, we see nothing to suggest that this was the operative factor in the *Riding* decision. Furthermore, as pointed out by Liberty, such matters may be handled through telephonic conferences, such that there may be little time for the creditor to confer with its attorneys before the conferences take place. Also, with the use of telephonic hearings there is no opportunity to cross-examine witnesses or offer proof, thereby depriving a creditor of an opportunity to examine the debtor's plan or examine the debtor under oath.

Carter has failed to put before this Court sufficient authority to establish that it is procedurally correct for a turn-over action to proceed by motion. In light of Rule 7001, the Bankruptcy Court should not have granted the motion.

Finally, Carter argues that since Liberty will retain its security interest, Liberty could bring a motion for modification of the automatic stay or motion to dismiss if Carter fails to live up to her obligations. This has nothing to do with whether an action for turnover of property should be brought by motion or adversary proceeding. Actually it goes more to the question of whether Liberty was given adequate protection with regard to its security interest in the secured property.

### ADEQUATE PROTECTION OF CREDITOR'S SECURITY INTEREST

Title 11 U.S.C. Sec. 363(e) states that upon a request by an entity that has an interest in property used, sold or leased, or proposed to be used, sold or leased by the trustee, "the court, with or without a hearing, shall prohibit or condition such use, sale or lease, as is necessary to provide adequate protection of such interests." 11 U.S.C. Sec. 361 lists three possible methods by which adequate protection may be provided to a secured creditor: (1) requiring trustee to make a cash payment or periodic cash payments to such entity to the extent that the use, sale or lease under Sec. 363 results in a decrease in value of such entity's interest in such property; (2) providing such entity with an additional or replacement lien to the extent that such stay, use, sale, lease or grant results in a decrease in the value of such entity's interest in such property; (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as administrative expenses as will result in the realization of such entity of the indubitable equivalent of such entity's interest in such property.

Liberty contends that it received inadequate protection under 11 U.S.C. Sec. 363(e) because no provision was made for payment of property depreciation, payment was not granted and no method of compensation was made for value reduction of property in the case of default by debtor. The methods of compensation listed in 11 U.S.C. Sec. 361 are neither exclusive nor exhaustive. Thus, the Bankruptcy Court may accept a method of protection that does not fall under any of the methods listed in Sec. 361. Although the Court does not fashion the protection to be given to a creditor, it must examine the plan offered by the debtor or trustee in order to determine whether the interest of the secured creditor is adequately protected before it accepts the plan and allows turn-over of the property. The Bankruptcy Court determined that Liberty would receive adequate protection by the debtor's showing that she had obtained insurance on the vehicle and by giving the payment of Liberty's repossession expenses super priority over the administrative expenses.

Liberty argues that this would maintain the status quo, but that given the nature of the collateral involved, it was an abuse of discretion for the Bankruptcy Court to accept Carter's plan as providing adequate protection. First of all, vehicles depreciate in value. This deprivation is further increased by mileage as well as by wear and tear on the vehicle. The protection plan approved by the Bankruptcy Court does not compensate Liberty at all for the depreciation that will occur, especially between the period in which the car is turned over and receipt of first payment. Thus, the value of Liberty's security interest will decrease with no corresponding compensation.

The purpose of adequate protection is to provide a secured creditor the benefit of its

bargain while enabling the debtor to use the secured property; it is not intended as an "after the fact" method allowing creditors to obtain the full amount of secured claims. *In re Northeast Chick Services, Inc.*, 43 B.R. 326 (Bkrtcy.D.Mass.1984). The adequate protection doctrine exists in essence to prevent impairment of a secured creditor's position as a result of decline in value of debtor's assets. *U.S. v. Booth Tow Services, Inc.*, 64 B.R. 539 (W.D.Mo.1985). Thus, where collateral is sold or depreciated, the motion of adequate protection requires replacement or payment so that the value of the creditor's interest is not dissipated. *In re Prime, Inc.*, 35 B.R. 697 (Bkrtcy.W.D.Mo.1984).

Carter argues that Liberty's interests are adequately protected because it will receive full payment of its repossession costs before the administrative expenses are paid and that it would receive 100% of its payments under the plan. To start with, Carter's plan has yet to be approved. Furthermore, it will be at least four months before Liberty receives the first payment under the Plan. This does not take into consideration the fact that Liberty has not received a payment on the vehicle since April, 1993. The protection plan approved by the Bankruptcy Court does not make any provisions for the depreciation that will occur during the period between which Liberty is required to turnover the car and receipt of the first payment.

Carter maintains that since Liberty remains a secured creditor, its repossession rights also provide adequate protection. This is not adequate protection. Before Liberty may take action it must wait for Carter to default on her payments. Then it can bring a motion to modify the stay or for dismissal. The value of the vehicle will have declined; thus, upon resale, Liberty would be unable to receive as much as it could were the car sold today, thereby resulting in Liberty losing the full value of its secured property interest.

Before a debtor may receive the turn-over of property it must put forth a plan providing for adequate protection for any decline in value resulting from the use of the vehicle. Before passing on the adequacy of the debtor's protection plan, the Bankruptcy Court must establish the value of the secured creditor's interest, identify the risks to secured creditor's value resulting from debtor's use of the property and determine whether the debtor's proposal protects value as nearly as possible against risk to that value consistent with the concept of indubitable equivalence. *In re Rankin*, 49 B.R. 565 (Bkrtcy.W.D.Mo. 1985). Sufficiency of the protection is a question of fact to be determined by the Bankruptcy Court on a case by case basis.

The record is totally devoid of any evidence that the Bankruptcy Court considered anything before granting the motion for turn-over. There is no way to tell from the record whether or not the court considered the reduction in value that would occur once the vehicle was turned over. Nor does it appear that the court considered the adequacy of the debtor's protection plan. There is no way that insurance and payment of repossession costs can cover the value reduction that will occur because of depreciation and wear and tear.

An order in conformity has this day entered.

### ORDER

This matter having come before the Court on appeal from the decision of the United States Bankruptcy Court, and the Court having entered its memorandum opinion and being advised,

IT IS ORDERED THAT the decision of the United States Bankruptcy Court is reversed and the matter is vacated for further proceedings.

This is a final and appealable order.

June 17, 1994

/s/   Charles M. Allen
      Charles M. Allen
      Senior United States District Judge